[No. 3,289.]

ROBERT STRANG *v.* WILLIAM RYAN, MICHAEL BRESNAN, JOHN WHELAN, JOHN TUHEY, AND JOHN EVERETT.

MINING CLAIMS ON PUBLIC LANDS.—Mining claims on the public lands must be held and worked in accordance with the local mining laws adopted and in force in the mining district where the same are located.

ABANDONMENT OF CLAIM UNDER MINING LAWS. — If the local mining laws of a district provide that, on a failure to work and notice a claim as required by the mining laws, the claim shall be considered as abandoned, a failure to comply with such laws is an abandonment of the claim, and it is open to location as vacant ground.

RELOCATION OF MINE LOST BY ABANDONMENT.—If several, as tenants in common, locate a mining claim on the public lands, and, by a failure to comply with the local mining laws, forfeit the same, it may be relocated by a part of the first locators along with others who were strangers to the first location; and the tenants in common, whose names are left out in the notice of relocation, cease to have any interest in the mine.

RENEWAL OF LOCATION OF MINE.—If the mining laws require a renewal of notice of location at stated periods, and a claim has been lost by reason of a failure to make such renewals, and one of the joint locators afterward renews the location, stating that it is a renewal and not a new location, the renewal will inure to the benefit of all the locators.

REVIEWING EVIDENCE ON MOTION FOR NEW TRIAL.—A specification in a statement on a motion for a new trial in a case tried by the Court where findings of fact have been filed, that a particular finding, naming it, was not justified by the evidence, is sufficient to enable the Court to review the evidence so far as it relates to each finding thus pointed out.

APPEAL from the District Court, Second Judicial District, Butte County.

The defendants Ryan and Bresnan, who were not among the locators of 1858, claimed the three undivided interests for the recovery of which this action was brought.

From the time of the renewal of location made by Ryan in December, 1863, the location was renewed in June and December of each year, up to the time this action was commenced.

The statement on motion for a new trial was settled December 2d, 1871. The plaintiff recovered judgment in the Court below, and the defendants Ryan and Bresnan appealed.

The other facts are stated in the opinion.

*W. C. Belcher*, for Appellants.

The plaintiff must recover, if he recover at all, upon the ground that he had at the time he commenced his action, a then present right to the possession of the property sued for, and not upon the fact that all or any of the defendants had never acquired any right to it. In other words, the plaintiff must show that his right, which had its inception in the alleged location of May 2d, 1858, was perfected, and thereafter continued up to and existed in full force at the time of the filing of his complaint. It will not avail him to show that all or any of the defendants had never located the ground, and never had any interest therein. The complaint alleges that they are in possession, and this possession is presumed to be rightful until the plaintiff shows that he has a superior right.

Mining claims may be acquired in one of two ways: first, in the absence, or disregard of local mining laws, by actual possession or occupancy, which must be evidenced by physical marks upon and around the claims, sufficient to notify every one of the claim of the possessor. The rule is "that

the boundaries of the land claimed for mining purposes, must be indicated by such distinct physical marks, or monuments, as will fairly advertise to all concerned, where and what it is, or in other words, its extent." (*Hess* v. *Winder*, 30 Cal. 356.)

This rule is not satisfied by a notice upon a pine tree. In *Hess* v. *Winder*, there was a notice posted (see page 357), calling for as distinct and well defined boundaries as were called for by the notice referred to in this case, and yet that notice was entirely disregarded. "The fact is," say the Court, "that no visible monuments or marks designating the boundaries of the land were ever established beyond the lines actually surveyed. This being so, the American Company did not acquire possession or the right to possession of it." (See page 356.) *English* v. *Johnson*, 17 Cal. 107, is to the same effect. The plaintiff comes far short of showing that he and his associates acquired or could hold the claims under this rule.

The only other way to acquire title to mining claims is to locate them in strict conformity to the requirements of local mining rules and customs. But a notice, posted and recorded, has no tendency to prove right to a mining claim unless the local rules have provided that it shall. (*Morton* v. *Solambo C. M. Co.*, 26 Cal. 532 et seq.) In the absence of such rules, it gives no possession, marks out no ground, and evidences no title. The plaintiff, then, failed to show that he and his associates acquired any right by their alleged location of May 2d, 1858.

The notice of February 21st, 1859, was not the notice of plaintiff or his associates. The plaintiff, then, can claim nothing under this notice. But if he could, it was never renewed or recorded after November 1st, 1859, till December 10th, 1863. Here was a lapse of time fatal to the plaintiff's claim. The law of 1861 was imperative that all claims should be recorded or renewed, on the first day of June and

December of each year, or within ten days thereafter, and in case of failure, be considered abandoned. (*St. John* v. *Kidd*, 26 Cal. 270.)

Again, the renewal of December 10th, 1863, was made by order of Ryan, and those of December 9th, 1864, June 9th, 1865, and December 6th, 1865, by order of Bresnan, both of whom, according to the plaintiff's theory, were strangers and interlopers. Now the plaintiff must take one horn of the dilemma or the other. He cannot repudiate Ryan and Bresnan, and at the same time claim under their location and renewals. When the law requires notices to be renewed, it means, and must mean, that they must be renewed by those who assert rights under them.

To the notice of February 21st, 1859, there are subscribed eleven names, among which is that of Daniel Burns. This name is not appended to the renewal of this notice in November, of that year, nor to any subsequent renewal. The plaintiff has a deed from Burns, dated October 3d, 1868, and claims that Burns became the owner of an interest by reason of this location, of which he could not afterwards be divested by dropping his name, and that the plaintiff is at least entitled to recover that interest in this action. We were cited to *Gore* v. *McBrayer*, 18 Cal. 588; *Morton* v. *Solambo C. M. Co.*, 26 Cal. 531–535. In the first case cited, Gore, McBrayer, and others had entered into an agreement to prospect for quartz, and that "if anything was discovered, all the company was to have an equal interest in it." McBrayer discovered a lead, and, in conformity to the local laws, took it up by a notice, to which, among others, he subscribed Gore's name. On the following day McBrayer caused the first notice to be destroyed, and then placed another on the claim, omitting Gore's name.

The Court holds that "the agreement operated as the authority from Gore to McBrayer, to take up this claim or any other, and to use his (Gore's) name for that purpose. It

is as if Gore had made McBrayer his agent to take up the claim for him and in his name; and, upon the performance of the act, Gore's title, so to speak, vested, and he was the owner, subject to the rules of the vicinage, of the claim, or his share of it."

In the second case cited, it appeared that the local laws provided that one who desired to locate a mining claim for himself and others, might do so by putting up a notice with his own name and the names of those for whom he chose to associate with him appended thereto. It was held that the laws made the locator the agent of those whom he chose to act, and his act their act, regardless of the fact whether they had any knowledge of it or not. It was also held, that when he had once located his power as agent ceased, for beyond the act of location the custom does not authorize him to proceed as agent, and he can thereafter make no change without power to do so from the person whose name he has so used.

We accept these cases as good law, but the distinction between them and the case at bar is very apparent.

*Creed Haymond*, for Respondents, upon the point that the specifications in the statement were not sufficient to enable the Court to review the evidence, cited Practice Act, Sec. 195: *Butterfield* v. *C. P. R. R. Co.*, 37 Cal. 383; *Brummagim* v. *Bradshaw*, 39 Cal. 33; *Beans* v. *Emanuelli*, 36 Cal. 120; *Praulus* v. *Pacific Gold and Silver Mining Co.*, 35 Cal. 32, 37.

By the Court, CROCKETT, J.:

This is an action to recover the possession of an undivided interest of three tenths in certain mining ground situate at Cherokee Flat, in Butte County. The plaintiff claims that on the 2d day of May, 1858, he and nine other persons

located, according to the mining laws then in force in that district, ten mining claims, including the ground in controversy; and that the location so made has been kept good ever since by a compliance with the requirements of the mining laws and regulations of that district. Since the original location he has acquired the rights of two others of the locators, and, therefore, claims to be entitled to three tenths of the ground. The local mining laws then in force in that district provided that a notice describing the boundaries should be posted on the premises, and should be recorded in the office of the District Recorder. This ground was what is termed "deep diggings," and in respect to that class of mining ground the local laws provided that after the posting and recording of the notice the record would hold the claim good from the first day of November in each year until the first day of the succeeding May; but that from the first of May to the first of November in each year the ground must be worked one day in every five, if there was sufficient water; and, if not, the claim might be preserved by a notice posted on the ground, and to be renewed every ten days. But, in case of a failure to work the claim or renew the notices, as above stated, the claim was to be considered as abandoned. It appears from the proofs and findings that the original notice was posted and recorded on the 2d day of May, 1858; but no work was done on the ground until the Fall of that year, when a shaft was sunk and the boundaries were marked out by several blazed trees and a pile of rocks. On the 1st of November, 1858, the record of the claim was renewed, after which nothing was thereafter done to preserve the location, unless the acts performed by the defendants and others under *their* location of February 21st, 1859, shall be held to have inured to the benefit of the original locators, and thus preserved their claim. At the last named date, the defendants Ryan and Bresnan, together with nine other persons, seven of whom were original locators under

the notice of May 2d, 1858, posted a notice on the premises, claiming the ground for mining purposes; which notice was duly recorded.   From this notice, the names of the plaintiff Strang, Ragget, and Kennedy, three of the original locators, were omitted, and the names of William Ryan, Bresnan, John Lynch, and Michael Ryan were inserted, none of whom were original locators; and the Court finds that the three omitted names were left out without authority, and without the consent of said persons.   Without determining whether this notice inured to the benefit of the three persons whose names were omitted, it will be assumed for the purposes of this decision that it had precisely the same legal effect as though their names had been inserted.   There was evidence tending to prove that during the Spring of 1859 a small amount of work was done upon the claim by the defendant Ryan, and in the Spring of 1860 a shaft was sunk to the depth of forty feet.   During that year, and up to March, 1861, considerable work was done by the company, at which time the work was discontinued by the company as such, but it was agreed that any member might work the claim on his own account and for his own benefit.   In pursuance of this authority, several of the original locators, and also the defendant Ryan, as the Court finds, worked the claim up to the Fall of 1863.   But on the 1st day of December, 1861, a new code of mining laws went into effect in that district, which repealed and superseded the former laws.   By the new law it was provided that all claims shall be recorded by the Recorder of "this mining district on the first day of June and December of each year; *provided*, that after the first record a renewal of the same shall be sufficient; and all claims not so recorded or renewed within ten days after the said first day of June and December of each year, the same shall be considered abandoned." No provision is made for the working of the claim as a condition for preserving the location.   All that is required is

that the claim shall be recorded and renewed as above provided; and the Court finds that "the claims were kept alive and held from the 10th day of December, 1863, to the 9th day of December, 1869, by renewing and recording the same in the office of the Mining Recorder for said district, in accordance with the mining laws of said district." But there is nothing either in the findings or the evidence tending to show that the record of the claim was renewed at any time between the 1st day of December, 1861, when the new laws took effect, and the 10th day of December, 1863. It is clear, therefore, that whatever rights were acquired either under the notice of May 2d, 1858, or under that of February 21st, 1859, were lost by a failure to renew the record between December 1st, 1861, and December 10th, 1863. It results that if either of the parties have any right to the ground under the local mining law, it must have been acquired in virtue of the proceedings had on and subsequent e 10th day of December, 1863, on which day the defendant Ryan caused to be recorded in the office of the District Recorder a notice in the following words:

"December 10th, 1863, Wm. Ryan orders the following renewal. This is the Irish Co: Notice—We, the undersigned, claim ten mining claims on Sawmill Ravine, commencing at this notice, on a pine tree, running a northeasterly direction five hundred feet, and running north from this notice two hundred feet, running into Sugar Loaf Mountain five hundred feet, and from thence to the center of the Sugar Loaf Mountain, and five hundred feet along the ravine and the south line by Gregory's old cabin; and we claim an outlet from said claims, Cherokee Flat.

(Signed:)        "JAMES LYNCH, three claims;
                "WILLIAM RYAN, two claims;
                "JOHN EVERETT, two claims;
                "MICHAEL BRESNAN, one claim;
                "JOHN TUHEY, one claim;
                "JOHN O'KEEF, one claim."

This was evidently intended as a renewal of the old notice, and not as an original location. It is expressly declared on its face to be a renewal, and the mining law then in force provided that "no miner shall be entitled to hold more than one claim by location or preëmption at the same time." If it was effectual as a renewal for any purpose after the claim had lapsed by reason of a failure to renew the record for the preceding two years, it was a renewal made by and for the benefit of those whose names are appended to it, only three of whom were original locators under the notice of May 2d, 1858. This renewal was made by Ryan, and several of the subsequent renewals by Bresnan, who were strangers to the location of May 2d, 1858, and in nowise in privity with the plaintiff or those under whom he claims. They were in no sense the agents of the original locators, or any of them, in causing the renewals to be made, but were acting for themselves and their associates, whose names were appended to the notice of December 10th, 1863. In authorizing a renewal of the record as a method of preserving a location, the local mining law contemplated a renewal to be made by the parties in interest, or their privies, and not by a stranger, and particularly by one claiming in hostility to them. If, therefore, the renewal of December 10th, 1863, and those subsequently made, were operative for any purpose, they inured to the benefit of those who authorized or caused them to be made, and not to the benefit of the plaintiff or his grantors. It results from these views that the plaintiff failed at the trial to establish a title to any portion of the mining ground in controversy.

It is insisted, however, on behalf of the plaintiff, that we cannot review the evidence, for the reason that the statement on the motion for a new trial contains no sufficient specification of the particulars wherein the evidence does

not justify the findings and judgment.    But the first, second, third, fourth, sixth, seventh, eighth, and thirteenth specifications are certainly not obnoxions to this objection.    Each of them specifies a particular fact found by the Court, which it is alleged was not supported by the evidence, and in respect to all the remaining specifications, each of them points to a separate, specific finding, confined to one or two facts, and avers that it was not justified by the evidence.    We think this was a sufficient specification under section one hundred and ninety-five of the Practice Act.

Judgment reversed and cause remanded for a new trial.

Mr. Justice BELCHER, being disqualified, did not participate in the decision.