SAUNDERS ET AL., appellants, *v.* MACKEY, respondent.

MINING CLAIM — *Annual work* — *Forfeiture* — *Tenants in common* — *Trust.*— A tenant in common of a mining claim, who enters into an agreement with his co-tenant, whereby the latter promises to do the annual work necessary to hold the claim, forfeits his interest in the claim if such representative work be not done. The claim thereupon becomes open to relocation, and a valid location thereof may be made by the tenant who made default. In such case the remedy of the other co-tenant is by an action for breach of contract, or to establish and enforce a trust in the claim as relocated.

*Appeal from Third District, Jefferson County.*

SANDERS & CULLEN, for appellants.

There is but a single question presented in this record: Does the complaint state facts sufficient to constitute a cause of action? The complaint avers that the parties to this action, with one other person, were co-tenants, owning as such the Belle of the Boulder and Eclipse quartz lodes; the plaintiff owning one-half thereof, and the defendant owning the undivided one-fourth thereof. That in the year A. D. 1882, they employed the defendant to represent the lodes, agreeing to pay him therefor the sum of $100, that being the proportionate amount of labor to be expended by them upon said claims in order to prevent them from being subject to relocation under the mineral land act. That the said defendant, for the purpose of defrauding them out of their interest in said claims, neglected to represent them, as he had agreed to do, and on the 1st day of January, A. D. 1883, relocated the more valuable portions of both claims, calling the same the Baltimore lode, and ousted the plaintiffs from their interest in said lodes. The complaint alleges, also, that the plaintiffs, relying upon defendant's agreement to do the requisite amount of work, failed to do the same themselves, and were ignorant that it had not been done until long after such pretended relocation by the defendant.

It is respectfully suggested that this complaint makes such a clear case of fraud against this defendant as entitles these plaintiffs to charge him as their trustee as to any title he may have acquired through these covinous acts. Eliminating all questions of co-tenancy from the case, and supposing this defendant was a third party in no wise connected with the former title, can it be possible that a court of equity would thus permit him to take advantage of his own wrong and assert a title thus acquired? The demurrer confesses the allegations of this

complaint to be true, and so every fact well pleaded therein must be taken to be absolutely true. It is therefore admitted that this defendant agreed to do this representation work; that plaintiffs relied upon his fulfillment of his agreement; had no knowledge that such work had not been done, and that but for these facts would themselves have done or caused to have been done the requisite work. It is charged, also, that these acts were done on the part of the defendant fraudulently and for the purpose of depriving plaintiffs of their interest in the property; and clearly, by every principle of law or equity, we are entitled to hold him as our trustee to the extent of our interests in his possession. 1 Perry on Trusts, sec. 181, p. 208, and cases there cited.

But it appears from the complaint that the parties to this action were co-tenants of the property at the time the agreement to represent was made, the defendant owning the undivided one-fourth of the same. The same good faith, in all matters touching the common property, is required of co-tenants as is required of trustees, administrators and other persons occupying fiduciary relations. Freeman on Co-tenancy and Partition.

When several persons hold title jointly to an unpatented mine, they are tenants in common, and the doctrines of co-tenancy are as applicable to them as if they held the government title to the property. *Hughes* v. *Devlin,* 23 Cal. 502.

If, then, the doctrines of co-tenancy are applicable to cases like the one at bar, it is clear that the defendant could not acquire a title in the premises in controversy by failing to perform the annual labor, and then relocating the property in his own name; and this would be true entirely independent of the question as to whether he had contracted with his co-tenants to represent or not. A co-tenant cannot, by the purchase of an outstanding title, acquire title in himself to the whole estate, but the title thus acquired will inure to the benefit of all of the

co-tenants, subject only to his right to demand contribution from them.   *Van Horn* v. *Fonda*, 5 Johns. Ch. 388; *Weaver* v. *Wible*, 25 Pa. St. 270; *Bothwell* v. *Dewer*, 2 Black, 613; *Busch* v. *Horton*, 75 Ill. 303; *Bracden* v. *Cooper*, 80 Ill. 221; *Fallon* v. *Chidester*, 46 Iowa, · 588; *Loyd* v. *Lynch*, 28 Pa. St. 419; *Moss* v. *Shear*, 25 Cal. 38; *Coppinger* v. *Rice*, 33 Cal. 408; *Duboise* v. *Campeau*, 24 Mich. 360.

It is fraud for a tenant in common to permit the common property to be sold for taxes and himself become the purchaser of it at a tax sale.   *Brown* v. *Hoyle*, 30 Ill. 119.

But every question which arises, or could possibly arise, in this case, is conclusively settled by the mineral land act itself.   Section 2324, Revised Statutes United States, provides for a summary acquisition of the interests of a co-tenant who shall fail to represent or contribute to the annual expenditure required by law to be made. It is a legal maxim, that the express mention of one thing is the exclusion of all others; and congress having provided this method, which is, as will be seen, in strict harmony with the doctrines governing tenancy in common, it must follow that a co-tenant in this species of property is held to the same good faith which is required of him elsewhere.   We have not been able to find any cases decided under this provision of the statute; but Mr. Wade, in his book on mining, does not hesitate to express his opinion that what is popularly known as "advertising out," is the only method by which a co-tenant can acquire the interest of his co-owners.   Wade's Am. Mining Law, p. 59.

E. W. & J. K. TOOLE, for respondent.

The record in this case presents the following facts upon which the question involved arises: It appears that Julia D. Saunders, one of the plaintiffs herein, the defendant, and one E. G. Marshall, in the year A. D. 1882,

were the owners of two certain lode claims — the Belle of
the Boulder and Eclipse — as tenants in common. That
said plaintiff was the owner of one undivided half of
said property, and said defendant and said Marshall were
each the owners of an undivided one-fourth thereof.
That said plaintiff employed the defendant to do $100
worth of work upon the two ledges aforesaid, the same
being her proportionate part of the representation thereof
required by the laws applicable thereto. That she relied
upon said contract. That said defendant failed to per-
form said services during said year, and relocated a por-
tion of each of said ledges under the name of the
Baltimore lode, in 1883. This action is brought, not for
the purpose of acquiring an interest in the relocation or
Baltimore lode, but to declare the same invalid and a
cloud upon the title to said Belle of the Boulder and
Eclipse lodes, and to have the same removed. The de-
fendant interposed a demurrer to the complaint for the
reason that the facts stated do not constitute a cause of
action.

The only question presented is, Did the relation of the
parties or the contract mentioned operate to prevent a
forfeiture of the property on account of the non-repre-
sentation of the property for the year A. D. 1882, so as
to prevent a relocation thereof in the year 1883 by de-
fendant? It will be seen that this is not a case in which
defendant is sought to be held as a trustee on account of
his fraudulent acts, so as to follow the trust property
and secure an interest in the relocation. It is a suit to
declare this title invalid and uphold the title of the Belle
of the Boulder and Eclipse lodes.

The constitution of the United States has delegated to
congress the power to dispose of the public domain. This
delegation of authority is construed by the courts to be
exclusive, and the terms of the instrument itself exclude
any other conclusion. The act of congress, in exercising
the power thus conferred, in so far as it bears upon the

question involved, is as follows: . . . "On each claim located after the 10th day of May, A. D. 1872, and until a patent has been issued therefor, not less than $100 of labor shall be performed or improvements made during each year. . . . And upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had been made." It is admitted that the representation required was not made, and the simple question is, does the contract of the parties or the statute prevail?

No exception is made, and we take it that in all cases where the parties fail to represent, for whatever cause or under whatever circumstances, the property becomes subject to relocation, as if no location had ever been made. If no location had ever been made of this property, no one could doubt the right of defendant to locate it; and to give effect to the statute, this is precisely the situation of the property at the time of defendant's relocation. He acquires *ex vi termini*, under the law, just such a title as against the government and all persons whomsoever, as if no location had theretofore been made. To hold otherwise would utterly defeat the operation of the law and deprive congress of the primary disposal of the soil. It would allow the contract of the parties to avoid a forfeiture when a forfeiture is expressly provided for, and defeat the operation of a grant to a relocator in cases where a grant is expressly made. It is a statute of limitation, designating the period within which the work shall be done, and defining the consequences that ensue from a failure. It is a universal rule in construing such statutes, that no exceptions are entertained by the courts except those contained in the act itself. Here there are none. It would seem that this question is too clear and plain, under the provisions of the statute, to admit of any doubt. The statute itself must provide the exigencies upon which a compliance with its terms are to be dis-

pensed with. It is the subject of legislative enactment and cannot be supplied by judicial interpretation, where the meaning and language is clear and unambiguous. It will be seen that there was no agreement to relocate for plaintiff, or any agreement not to locate at all, so as to create any agency with reference to the Baltimore location; and if there was, no agency could be created that would clash with the express provisions of the statute declaring a forfeiture and the rights that accrue to persons entitled to relocate under it. It was a simple contract to do so much work, which was not done. The defendant is liable in damages for a failure, but it does not divest him of his legal right to relocate under the law. It is not so strong in its terms as a contract not to sue. He does not even agree not to relocate; and if he did, like a contract not to sue, it would not defeat him in the exercise of his legal right to do so. And this is the result as expounded by the courts, in the absence of a statute like the one quoted, declaring the exact consequences following a failure to represent, and declaring the exact *status* of the property after such failure has occurred. There was no agency or trust created by the contract of the parties on account of which plaintiff was to participate in the property relocated, so as to authorize its enforcement on that account, nor was there any contract by which he agreed not to relocate, by reason of which any trust was created in that respect, so as to even bring it within the rule before referred to. Nor can any fraud be inferred from doing, or failing to do, either of these acts, that would create a trust such as would operate to defeat the provisions of the statute. It must be conceded that the Belle of the Boulder and Eclipse became forfeited under the law, and subject to relocation, as if no location had theretofore been made; and that the relocation of the Baltimore was valid. The whole of this case is in a nutshell. The contract was to perform so much labor; it was not done. The property became

*publici juris*, and defendant relocated it. He did not contract not to relocate; and if he had, it would be contrary to public policy, in tending to impede the operation of the laws of the United States in the entry and settlement of the public lands, and development of the resources of the country. As well might it be contended that a contract by one entitled to enter a homestead or pre-emption claim, not to do so, would be enforced by the courts. The same principle is applicable to a mineral entry, and to this case, if, by a fair construction of the allegations of the complaint, the court concludes that there was an implied agreement not to relocate.

Again, it is contended by counsel for appellants, that, inasmuch as the parties were tenants in common, the relations between the parties would prevent the forfeiture and avoid the relocation. This cannot, in the nature of things, be so. Aside from the contract we have discussed, defendant was under no more obligation or duty to represent those plaintiffs. But as heretofore seen, the consequences following from a failure to represent, follow alike with tenants in common and individuals. A forfeiture results from a non-compliance in both instances. Tenants in common are not made exceptions under the statute. The law provides for holding as individuals and also as tenants in common, and the same provisions by which the claims became again public domain in the one case apply in the other.

Again, it will be seen that no contract was made for doing the work for Marshall; nor was there any agreement to do the work required on the part of defendant. It is true the parties, as tenants in common, hold *per my et per tout.* Yet, in so far as representation is concerned, the work for all must be done, or a forfeiture accrues.

It is not pretended that defendant agreed to represent Marshall's interest, and his (Marshall's) failure to do so would of itself work a forfeiture of the whole property. The law does not impose upon either tenant in common

a duty to represent for the other. It provides a forfeiture upon a failure, and the means of enforcing his demand against the other tenant, when he voluntarily does so. But it everywhere requires the full amount of $100 of work on each claim; *i. e.*, in this instance $200 in labor or improvements.     Supppose the contract had been carried out.    Defendant and Marshall were at liberty to do, or not to do, their half of the required work, as they might see fit.    Neither of them did their part, and had they done the work for plaintiff it would have been unavailing, even then, to have prevented a forfeiture.    The contract should have been for a representation of the whole property to support this case, even under appellants' theory of it.    This is what is contemplated.    The government does not recognize a forfeiture of half, so as to make it a tenant in common in the property. We are at a loss to see why counsel cite a list of authorities to show that a tenant in common cannot purchase an outstanding title for his own individual benefit.

1st.  Because this is not an action recognizing the purchase of defendant, and asking to be let in with him in the Baltimore location.

2d.  Because the act of congress declares the tenancy dissolved upon a forfeiture, and authorizes any one to relocate and acquire a title, not in trust for his co-tenant, but in his own right.  Were it otherwise, where co-tenants had forfeited their claims, one would be concluded in making the entry, except for the benefit of all.    So far as a representation on account of the tenancy is concerned, defendant was under no more obligation to represent plaintiff's interest than plaintiff was to represent his.    He certainly made no arrangement to represent the interest of defendant.    His obligation to represent grew exclusively out of the alleged contract.    In this, his tenancy has no more to do than if he were a stranger.    The true rule is, the agency and relation is terminated upon a failure to represent, and a forfeiture accrues; and there is

no title left against which there can be one outstanding.. We do not consider the authorities cited by appellants applicable, nor have we been able to find any directly in point. The question is a novel one, so far as we can discover, and involves purely the construction of the statutes we have quoted.

WADE, C. J. This is an action to quiet the title to a mining claim and for other relief, in which there was a demurrer to the complaint sustained, and a judgment for defendant, from which plaintiffs appeal. The complaint substantially alleges that, in the year 1882, Julia D. Saunders, who is the wife of her co-plaintiff, Cole Saunders, and one E. G. Marshall, and this defendant, respondent herein, were the owners of, and tenants in common in, the "Belle of the Boulder" and "Eclipse" quartz lode mining claims, situate in the "Boulder mining district," Jefferson county, and entitled to the possession thereof; the said Julia D. Saunders owning the undivided one-half of each of said claims, and the defendant and said Marshall owning the other undivided one-half thereof; that being so tenants in common, it was agreed by and between the said Julia D. Saunders and the respondent, that the respondent should do the representative work necessary under the laws of the United States, to be done in and upon said mining claims to represent the same for the year 1882, in consideration whereof the said Julia D. Saunders promised to pay the respondent the sum of $100 therefor, that being the portion of such representative work necessary to preserve plaintiffs' interest in, and to, said mining claims from being subject to relocation; that the appellants, relying on the promise of the respondent to do, or cause to be done, such representative work, neglected to do and perform said work, or cause the same to be done, before the 31st day of December, 1882; that the respondent, designing to cheat and defraud the said Julia D. Saunders of her

interest in said mining claims, after the time for representing the same had passed, relocated a portion of said claims as the Baltimore lode mining claim, and ousted the appellants of their possession of the premises; that appellants desire to represent said claims for the year 1883, but that respondent will not permit them so to do, and by force and threats prevents them from performing any work on said claims; that respondent is insolvent and unable to respond in damages, and that appellants have no speedy or adequate remedy at law. Wherefore, they ask that the "Baltimore" location be set aside so far as the same embraces any portion of the " Belle of the Boulder " and "Eclipse" location; that appellants be let into the possession of said claims, and that respondent be enjoined from preventing appellants representing the same.

It appears from these allegations that the " Belle of the Boulder " and "Eclipse" claims were not represented for the year 1882, and the reason assigned for not representing them is that promise and agreement of respondent that he would do the work for the purpose, which he failed to perform. This question is presented: Does a location, with a promise to represent, save a mining claim from forfeiture or protect it from relocation after the time for representation has expired? The act of congress of May 10, 1872 (United States Revised Statutes, section 2324), under which the claims in question were located, provides as follows: " On each claim located after the 10th day of May, 1872, and until a patent has been issued therefor, not less than $100 worth of labor shall be performed, or improvements made during each year; . . . and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made."

Title to the public mineral lands is acquired and held by discovery, location and representation, in the manner provided by law. Representation from year to year

keeps alive the grant. If representation fails, the grant fails, and the ground is open to relocation and purchase. The terms of the law are absolute. There are no exceptions. If the representative work for the year is not performed, the ground located becomes again a part of the public domain. An agreement to represent is not a representation. After the period of representation has expired, an agreement to represent, not performed, cannot save a claim from forfeiture and relocation. Such an agreement would not have the effect to keep alive the grant. It would not revive a right already lost. It would not tide over the period of representation from year to year, and prevent a relocation of the ground. It is not material for what reason there has been a failure to perform such an agreement. The conclusive fact is, that the ground has not been represented. Congress alone has authority to dispose of the public lands. If an agreement between individuals could prevent a relocation of the public mineral lands, then the primary disposal of the soil may be taken from congress and confided to the contracts of private parties. The fact that these parties were tenants in common does not affect the question of representation. Mining claims so owned must be represented as if owned by one person. Representation is a unity. The co-owners may cause representative work to be done on the claim, according to their respective interests; but when completed it must amount to one whole representation; otherwise, the claim is not protected from relocation. Any co-owner or co-tenant may represent the claim, and compel those interested with him to bear their proportion of the expenses; but the claim must be represented, and the agreement of a co-tenant to bear his proportionate share of the expenses is not a representation, and does not relieve him from the consequences of a failure to represent.

The complaint alleges that the respondent promised to represent said mining claims, and that the appellant,

Julia D. Saunders, in consideration thereof, agreed to pay him $100 therefor, that being the portion of such representative work necessary to preserve her interest in the claims. But the necessary work for that purpose was a full and complete representation of the claims. There was no consideration for the promise of respondent to represent his own interest or that of Marshall. He was, therefore, under no legal obligation to represent the claims for himself or Marshall. And if an agreement to represent could, in any case, protect a claim from relocation, the agreement in question is wholly insufficient, for it only provided for one-half the work necessary to represent the claims. If the respondent had performed the $100 worth of representative work for Julia D. Saunders, it would have been of no avail in protecting the claims, unless the interest of respondent and Marshall had been represented, and this was not provided for.

The "Belle of the Boulder" and "Eclipse" claims not having been represented during the year 1882, they became thereby a part of the public mineral lands, and subject to relocation on the 1st day of January, 1883. If the respondent has violated his contract, he is liable to damages for a breach thereof; and if the relations between him and Julia D. Saunders were such as to make him her trustee in the location of the "Baltimore" claim, a proper action would so declare him, and protect her interest therein; but there is nothing in the complaint to invalidate the "Baltimore" location and claim.

Judgment affirmed.