## HUNT v. PATCHIN.

*(Circuit Court, D. Nevada. June 8, 1888.)*

1. MINES AND MINING—LOCATION AND ACQUISITION—TRUSTS—CONFIDENTIAL RELATIONS.

   The owners in common of mining claims, owing to difficulty in raising money to pay the taxes and do the labor required by statute to prevent a forfeiture of the claims, after extensive correspondence between complainant, who was the principal owner, and defendant, who was acting as manager of the mines, determined to allow a forfeiture, and let defendant immediately relocate the claims in new names, which he did in his own name alone, after writing for advice to complainant, who prepared and sent him a form of notice in his name as locator. *Held*, that a trust attached to defendant's title in favor of his associates.[1]

2. SAME—LIMITATION OF ACTIONS—RUNNING OF STATUTE.

   An action begun May 18, 1885, to enforce such trust, the relocation having been made January 1, 1883, is not barred by the statute of Nevada limiting to two years the time for commencing an action to recover a mining claim, where there was no intimation that defendant denied the trust until May 29, 1883, when, in answer to one who delivered a message from complainant in relation to a sale of the mines, he said that he had relocated the whole mine in his own name, but if a sale was made he would do the square thing by his associates.

3. SAME—FAILURE TO SET UP ADVERSE CLAIM.

   Where defendant, after relocating a mining claim in his own name for the benefit of himself and associates, and after action brought to enforce the trust, applies to enter the land as mining ground, advertises in pursuance of statute, and, no protest having been made, pays the purchase money, and has a certificate of entry issued to him, the complainant's right is not concluded by the certificate, though he does not set up an adverse claim and bring suit to establish his right within the time allowed by statute, as his title is not adverse to, but a part of, that upon which the certificate was obtained.

In Equity. Bill to establish a trust in certain mining claims.

J. D. Torreyson and A. B. Hunt, for complainant. Trenmore Coffin and George S. Sawyer, for respondent.

Before SAWYER, Circuit Judge.

SAWYER, J. This is a bill in equity to establish a trust in three mining claims in favor of complainant, and to compel a conveyance to him of the undivided fifty-one sixtieths parts. For some years prior, and down to January 1, 1883, the complainant, the defendant, and one James were owners as tenants in common of three silver mining claims in eastern Nevada, of which complainant held thirty-one sixtieths, James twenty sixtieths and defendant nine sixtieths. These proportions were fixed by a mutual interchange of conveyances. The interest of James, whatever it is, has become vested in complainant, making his interest now, if he has any, fifty-one sixtieths, and that of defendant, nine sixtieths. During the year 1882 the parties found it inconvenient to raise money enough to pay the taxes and do the amount of work on the claims

[1]As to when equity will raise a resulting trust, see Bitzer v. Bobo, (Minn.) 38 N. W. Rep. 609, and note; Hay v. Martin, (Pa.) 14 Atl. Rep. 333, and note; Hoar v. Hoar, 1 N. Y. Supp. 379.

required by the statute to prevent a forfeiture, so as to render them liable to relocation. On this account, towards the close of the year 1882, there was considerable correspondence between complainant, living in San Francisco, and defendant, living in eastern Nevada, as to the best course to pursue; and the letters are in evidence. It is manifest from this correspondence, and the testimony of the parties, that it was thought best, and this was acquiesced in by all, that the money should not be invested in keeping up the old claims by performing the required labor, but instead that, at midnight of January 1, 1883, or immediately thereafter, the defendant should regard the old title as forfeited, and relocate the mines under new names, for the benefit of the then owners. There had been considerable litigation on the title of the old claims, and as no work had been done by anybody during the preceding year, it may have been thought that this relocation of forfeited claims would give a clear title. However that may be, it is perfectly clear from the correspondence and testimony that this proceeding was determined upon, and it is apparent also, that it was understood that the mines should be relocated in the name of defendant alone, but for the benefit of all; for in response to a letter from defendant asking advice how he should proceed, complainant gave the necessary advice, and prepared and forwarded a form of notice for a location in the name of defendant alone, with his name appended as locator. This particular notice so prepared was not in fact used, but other notices, similar in substance, were prepared and put up, with the name of defendant alone as locator. It is clear to my mind that complainant understood and had a right to understand from the action of defendant, that the location was to be made for the benefit of all the owners. If defendant did not so intend he acted in bad faith, for complainant could not from his correspondence and action under the circumstances have understood the matter otherwise. Besides, complainant sent to defendant something over $80 for payment of the taxes of 1882, which was retained, as late as February after the relocation, which he would not have been likely to do, if he had not supposed the relocation had been made for the benefit of all. And the retention of the money confirmed that idea. The complainant resided in San Francisco, nearly a thousand miles away from the mines, while the defendant resided at the mines in eastern Nevada and had, theretofore, been the managing man there. The haste manifested in making the location soon after midnight, arose from the fact that other parties were supposed to stand ready to relocate, immediately after the expiration of the year 1882. I am entirely satisfied that these claims were relocated under the new names at the time for the benefit of all the original owners, or else, they were located in bad faith by defendant, after giving his associates, by his conduct, the right to believe, and when they did believe, that the location was for the benefit of all. Under this state of facts I am clearly of the opinion that a trust arises in favor of complainant under the operation of law. Defendant, before, and up to the relocation, was managing the mines on behalf of himself and his co-owners, constantly consulting with them. He was in a position of trust in this particular, and bound to protect

their interests. It was his duty not to permit a forfeiture for the purpose of relocating and acquiring the whole for himself without their knowledge and consent. By conferring with them and arranging to forfeit, and relocate for the benefit of all, he misled them, and violated the confidence reposed in him, if he relocated clandestinely for the benefit of himself alone. By his act and this breach of faith he threw his associates off their guard, and prevented them from taking other means to protect their interests.

The Civil Code of California embodies the rule as it before existed, under the common law in equity jurisprudence, and as it now exists in Nevada, without a code, in the following language:

"One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful acts, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." Civil Code, § 2224.

Here was fraud, for the complainant, who resided nearly a thousand miles away, was induced, by defendant's action, to believe that the claims would be forfeited and relocated for the benefit of all, and by these means the defendant in violation of his faith relocated, or he claims to have done so, for his own benefit alone. He stood in a confidential relation to complainant, being an associate owner intrusted with the management of the property. His duty, certainly, was to deal fairly by his associates. In my judgment there was fraud, also a violation of trust. If not, then defendant surely got the title to these claims by "other wrongful acts." The acts were not rightful, and, if not, they must have been wrongful. In *Lakin* v. *Mining Co.*, 11 Sawy. 238, 25 Fed. Rep. 337, a case similar, but not exactly like this, it was held that "where one party, wrongfully, obtains the legal title to land, which in equity and good conscience, belongs to another, whether he acts in good faith, or otherwise, he will be charged in equity as a constructive trustee of the equitable owner." Can it be doubted on the facts as they appear in the pleadings and evidence, that defendant got whatever title he has to the interest of complainant and James in the mines in question, through a breach of faith and confidence? It seems to me not. He must therefore be charged as trustee of their interests.

It is next insisted that the provision of the statute of limitation of Nevada, limiting the time to two years for commencing an action to recover a mining claim, is applicable, and that the suit is barred. Conceding, for the purposes of this case, that the two-years clause applies, the question then arises, when did the statute begin to run? The complainant says, from the time of relocating, January 1, 1883, the act of relocation in the name of defendant alone being of itself a hostile act, manifesting an intention to repudiate the rights of defendant's associates and to claim for himself alone. I do not think so, as we have seen the forfeiting of the old title and relocation was not an adverse proceeding, but one taken by the mutual understanding of the parties for the benefit of all. Defendant did not announce to his associates in this proceeding that he took action for himself alone, but, on the contrary, all his correspondence and

conduct held out to them the idea that he was acting, not for himself, but for the interest of all, and it was, manifestly, with this understanding that he was not only permitted, but encouraged, to proceed. He did not then put himself in a hostile attitude towards them, but pretended to be acting for them. The trust, as we have seen, at once attached, and when a trust attaches, the statute of limitation does not begin to run against the beneficiary and in favor of the trustee with respect to the trust property, until the trustee brings the knowledge of the repudiation of the trust home to beneficiary of the trust. I am satisfied that when the relocation was made, it was made in good faith for the benefit of all; that it was so intended at the time; and that the determination to claim all, was an afterthought. When defendant first changed his mind, and determined to repudiate the rights of his associates, does not appear. The repudiation could not have been brought to complainant's notice in February, when he sent the eighty odd dollars to pay the taxes of the preceding year; for he certainly would not have sent it after being informed that defendant claimed for himself alone the whole property taxed. And at that time defendant retained and appropriated the money to some uses without informing complainant of his purposes. The relocation was made January 1, 1883; two years from the time of receiving and appropriating the money would be as late as March 1, 1885. During the month of May, 1883, Mr. Eisnman had an interview with complainant, at his office in San Francisco, in which the latter spoke of his interest in these claims in such terms as to leave no doubt, that at that time he had no idea that his right was denied or repudiated by defendant, and he sent a message to defendant by Eisnman relating to a sale of the property, and mentions a person likely to purchase. This message was delivered to defendant on May 29, 1883, when defendant observed, that he had relocated the whole mine in his own name in January; but if a sale should be made he would do the square thing by complainant and James; and the witness says that "I concluded from the conversation with him that he recognized the interest of Hunt and James. There was, certainly, no distinct repudiation of complainant's right at this time, and this is the first time that anything appears tending in the slightest degree to indicate an intention to repudiate. Whatever defendant's secret intent might have been before that time, the conduct of complainant in sending the message shows that at that time he did not have the slightest idea that his right was denied. Defendant's intention had, manifestly, not been brought to the notice of complainant. The bill in this case was filed May 18, 1885, within two years after the receipt by defendant of this message from complainant to him. As the repudiation of the interest of complainant had not been brought to his notice by defendant, his trustee, at that time the statute had not then begun to run, even if the two-years clause is applicable, and the bill was, consequently, filed in time. If a trustee, whether of an express trust, or of a constructive trust, arising by operation of law, repudiates his trust, the statute of limitations will not begin to run in his favor as to the subject-matter of the trust, till his denial of the trust is distinctly brought to the

notice of the *cestui que trust*, and if the trustee relies upon the statute the burden is on him to show when notice of the repudiation is brought to the notice of the *cestui que trust*. It does not appear in this case that complainant had such notice two years before the filing of the bill. On the contrary, it is manifest from the evidence that he did not. The suit, therefore, is not barred.

But one other point has sufficient plausibility to require notice. After this bill was filed defendant applied to enter the land as mining ground, advertised in pursuance of the statute, and, no protest having been made, in due time he paid the purchase money, and a certificate of entry was issued to him. It is now insisted, that, as complainant did not protest, and then bring suit to establish his right within the time prescribed by statute, he waived all adverse claim, and the entry is conclusive. But it was on this very title which defendant in part holds in trust, that he obtained his certificate of entry. It was on these relocations, which defendant held in trust, that he proceeded, and the entry gives effect to the relocation, with the trust attached. This suit was pending at the time of application for purchase, to establish, not the legal title, but a trust in it. This claim by complainant of a trust was not adverse to the possessory title upon which the entry was made, but a part of that title, and the trust which had attached before the entry, followed the title upon the entry based upon the possessory title of which it was a part. See *Lakin* v. *Mining.Co.*, 11 Sawy. 238, 25 Fed. Rep. 337. The complainant is entitled to the benefit of this entry to the extent of the trust.

There must be a decree for fifty-one sixtieths of the mining ground in question, in pursuance of the prayer of the bill, with costs, and it is so ordered.