[18035. Department Two.—April 27, 1893.]

## E. J. RICHARDS, RESPONDENT, v. M. J. WOLFLING, APPELLANT.

MINING LOCATION—VALIDITY—LAP UPON AGRICULTURAL CLAIMS—SUFFICIENCY OF WORK ON PRIVATE LAND.—Where a mining location was so made that one half of it was included in the limits of an agricultural claim afterwards patented as agricultural land, and shortly after the location the agricultural claimants granted the locator the right to work the mine upon the agricultural claim, the location is not rendered invalid because a portion of it was upon land not open to location; and work done within the limits of the agricultural claim for the purpose of developing the mine, which could only be profitably worked by commencing there and working toward the part of the claim which was upon public land, must be deemed to have been done on the mine for the purpose of holding possession of the whole claim, as against a subsequent mining locator upon the public land.

ID.—RELOCATION.—The owner of a mining claim may make a valid relocation thereof, and rely upon such relocation.

APPEAL from a judgment of the Superior Court of Tuolumne County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*F. W. Street,* and *F. P. Otis,* for Appellant.

*F. D. Nichol, E. A. Rodgers,* and *Reddick & Solinsky,* for Respondent.

McFARLAND, J.—The defendant filed an application in the United States Land Office for a patent to a quartz mining claim fifteen hundred feet in length and six hundred feet wide, called the "Scorpion." The plaintiff filed in said land office an adverse claim, averring that he was the owner of a quartz mine called the "Hope mine," and that a portion of the Scorpion mine claimed by defendant conflicted with a portion of said Hope mine. The contest was referred to the superior court, where the plaintiff brought this action, and the court found in favor of plaintiff for the portion of the mining ground in conflict.

Defendant appeals from the judgment and from an order denying a motion for a new trial.

Plaintiff introduced evidence tending to show ownership of the mining ground in contest, first under a location made by Alexander Araya and others in June, 1872, and also under a relocation made by said Araya and one Samuel Ralston on

the 7th of April, 1880. Many of the exceptions relied on by appellant refer to said location of June, 1872, and to evidence tending to show the continued ownership of plaintiff's grantors under that location down to the second location of April, 1880. We think that plaintiff showed a good location made in June, 1872, a conveyance by the other locators to said Araya, and a full possession by Araya under mining laws and customs down to April, 1880, and that if plaintiff could have shown those facts under the complaint the said exceptions would not be tenable; but as the complaint seems to be based expressly upon the second location of April 7, 1880, the testimony as to the location of June, 1872, perhaps should not be regarded at all, and therefore the exceptions as to that testimony need not be here examined.

On the 7th of April, 1880, the said Araya and said Samuel Ralston relocated the said Hope mine, the description being the same as in the location of 1872, except that the width was made only four hundred and fifty feet instead of six hundred feet, and their notice of location contained this clause: "This claim was recorded in 1872, and has been worked and held up to date." It is not disputed that this location of April, 1880, was made in accordance with the laws of Congress and the customs of the district, or that it was held by a proper mining possession, unless the whole location was invalid and void because a portion of the claim was afterwards patented as agricultural land to one St. Cyr, as hereinafter mentioned. The Hope mine runs generally in a northerly and southerly direction, and the northerly half of the claim (that is about one half) was on section 30 of a certain township, and the southerly half was in lot 1 of section 31, which lies immediately south of said section 30. At the time of the location it does not appear that lot 1 of section 31 had been patented, but it does appear that about three months afterwards a patent issued from the United States government to said St. Cyr for said lot 1. The northerly part of the mine in section 30 still is public land of the United States. Nearly all the work that has been done by plaintiff and his grantors on said mine is on the southerly portion of it, and upon the ground which lies within said section 31, afterwards patented to St. Cyr; and, as before said, there is no

doubt that more than sufficient work was done on the said southerly portion to hold the whole mining claim. Indeed, it appears that about two thousand five hundred dollars has been spent on the mine by plaintiff and his grantors. Under these circumstances appellant contends that the whole location of the Hope mine made by Araya and Ralston in April, 1880, is void, because the southerly portion of it was upon land not open to location, and that therefore the work done upon the southerly part of the mine was of no value in point of giving possession to the upper portion. It appears, however, that within a couple of months after the location of the Hope mine Araya and Ralston procured from the claimants of said lot 1 in section 31 a conveyance to them of the right to mine said Hope mine on the said lot 1. And under these circumstances we do not think that appellant's position is tenable.

If, after the second location in 1880, plaintiff's grantors allowed St. Cyr, without opposition, to procure a patent to lot 1, as agricultural land, of course they could not have made any successful contention for the mine, as against the holders of the agricultural patent. It does not appear whether or not at the time of the location of the mine they knew that there was any claim of any kind for the land as agricultural land. It was quite a common thing for miners in locating mining claims to be ignorant of government legal subdivisions, and of the inchoate rights of other persons to agricultural titles. In the present case the locators of the mine acquired from the agricultural owners the right to work the mine, and under these circumstances we do not think that a third person, not connecting himself with the St. Cyr right, is in a position to dispute the validity of the mining location. Appellant claims under a location made several years afterwards, to wit, in 1887, and his successful contest of respondent's right must rest upon the very narrow and technical point that a portion of the location of respondent was not on public land. But the real prior right in justice, and in accordance with the generally received notion of valid mining locations, is with the respondent; and we know of no absolute rule of law which makes such a location as that of respondent invalid, as against the subsequent comer, who evidently relies wholly upon this supposed defect in respond-

eut's location. There is no question that the land in contest between the parties in this action is unoccupied public land, and the contention that respondent cannot hold it because a portion of the ground located at the time was not public land cannot be maintained. Moreover, it appears from the evidence that the northerly portion of the Hope mine could be profitably worked only by commencing on the southerly portion and working northerly; and it has been frequently held that work done for the purpose of developing a mine is deemed to have been done on the mine, although actually done at a distance therefrom. Neither is the position tenable that there could not have been a valid relocation of the mine by plaintiff's grantors. (*Thompson* v. *Spray*, 72 Cal. 528.)

Appellant cites *Gwillim* v. *Donnellan*, 115 U. S. 45. In that case plaintiff claimed that his grantor, Thomas, had discovered a vein and sunk a discovery shaft at a certain point and thereupon made a valid location; but it appeared that he had not made such discovery, that one Fallon had previously made the discovery and had previously made a valid prior location of the claim, and had made application for a patent; that Thomas did not contest Fallon's application; and that Fallon obtained a patent for his location which included the discovery shaft of Thomas. And the court held that "a location on account of the discovery of a vein or lode can only be made by a *discoverer*, or one who holds under him"; and that "if the title to the discovery fails, so must the location which rests on it." The court further said that "the issue of the patent to Fallon was equivalent to a determination by the United States in an adversary proceeding, to which Thomas was in law a party, that Fallon had title to the discovery superior to that of Thomas, and that consequently Thomas' location was invalid." It is apparent, therefore, that the facts in that case were different from those in the case at bar. There nothing was involved but mining locations and rights; and the decision went upon the theory that the whole claim of Thomas rested upon an alleged "discovery" which he had not made, but which had previously been made by Fallon; and Thomas obtained no right from Fallon and did not connect himself with Fallon in any way. But in the case at bar, the mining location of plaintiff's grantors

was long prior to that of defendant, and was in every way a perfect location, except so far as it might be embarrassed by the rights of the subsequent agricultural patentee, with whom defendant does not connect himself in any way. And, therefore, we think that, as against the appellant, the title of respondent to that part of the Hope mine which is in conflict with the Scorpion mine is complete. To hold otherwise would be to commit an injustice which the law applicable to mining locations and rights does not demand.

There were numerous exceptions taken at the trial which we do not deem it necessary to notice. It is sufficient to say that we do not think that the court erred in excluding the judgment-roll in the case of *Wolfling* v. *McCormick;* and that there was no error committed in rulings concerning the testimony of the witnesses Tanzey and Araya. The other exceptions were either not well taken, or concern immaterial matters.

The judgment and order appealed from are affirmed.

DE HAVEN, J., and FITZGERALD, J., concurred.