[S. F. No. 1074. In Bank.—August 8, 1900.]

BERNARD CONWAY et al., Respondents, v. ED. L. HART, Appellant.

MINING CLAIMS—PRIORITY OF LOCATION.—The principle which governs the conflicting claims of appropriators of mining claims and other rights on the public domain is that, other things being equal, the prior locator prevails.

ID.—RECORD OF LOCATION—ABSENCE OF MINING RULES.—Where no mining rules or customs are made to appear requiring a record, it is not required by the Revised Statutes of the United States; but where a record of the notice of location is actually made which refers to some natural object or permanent monument, such as will identify the claim, the record is sufficient.

ID.—MARKING OF BOUNDARIES—REFERENCE IN NOTICE TO STAKES PREVIOUSLY SET.—Where stakes had been previously set upon a former occasion by the locators to mark the boundaries of their claim, which so distinctly marked the location on the ground that it could be readily traced, they were not required to take them out and reset them or to plant other stakes to mark their boundaries, and it was proper for their notice of location to refer to those stakes.

ID.—DISCOVERY BEFORE LOCATION—VACANT PUBLIC LAND—SUPPORT OF FINDINGS.—Where there was some evidence, though not very explicit, tending to support findings that a gold-bearing ledge was discovered and worked prior to the location relied upon by the plaintiffs, and that at the time of the location the land

was vacant public land, subject to appropriation, the findings are sufficiently supported by evidence as against the defendant, who was a subsequent locator, and asserted no title antedating his location.

ID.—RIGHT OF ACTION BY PLAINTIFFS—OPTION TO THIRD PARTIES TO PURCHASE—DEED—DELIVERY—FINDING AS TO INTENTION—RECONVEYANCE IN ESCROW.—A contract purporting to sell the mining claims of the plaintiffs to third parties for a sum to be paid on or before a certain date, and a deed purporting to convey the title to the purchasers left in their possession, but found by the court upon evidence not to have been intended as an absolute delivery, and a reconveyance by them to the plaintiffs placed in escrow, to be delivered to the plaintiffs upon failure of the purchaser to make such payment, all bearing the same date, are to be taken as parts of the same transaction, and as intended to create substantially an option in such third parties to purchase the lands within a stated time for the sum fixed by the contract; and such option does not interfere with the right of action by plaintiffs to recover the possession of their claims, supposing them to be included in the contract and deeds, as against a subsequent locator.

ID.—OVERLAPPING OF CLAIMS—LINE OF STAKES SET BY COPLAINTIFF—NONAGREEMENT—ESTOPPEL.—Where the subsequent location of the defendant's claim overlapped that of the plaintiffs, the subsequent fixing of a line of stakes by one of the plaintiffs, so as to lessen the overlap without the consent of the other plaintiff, and without any agreement by the defendant that such line should be a compromise boundary line between the claims, does not create an estoppel.

ID.—LIMITING CLAIM TO FIFTEEN HUNDRED FEET.—Where the court found that fifteen hundred feet running southerly along the ledge from plaintiffs' northern stake and shaft, as described in their notice of location, would end somewhat north of what they claimed to be their southerly end line on defendant's subsequent overlapping claim, the court properly confined the claim of the plaintiffs to the actual length of fifteen hundred feet from their starting point.

ID.—EJECTMENT—ACTION NOT ARISING FROM LAND OFFICE.—In an ordinary action of ejectment to recover the possession of a mining claim, not arising under the Revised Statutes of the United States out of an application to the United States land office for a patent, the rights of the parties, not as against the United States, but as against each other, are alone to be considered.

APPEAL from a judgment of the Superior Court of Mariposa County. John M. Corcoran, Judge.

The facts are stated in the opinion of the court.

Reddy, Campbell & Metson, and J. J. Trabucco, for Appellant.

J. W. Congdon, and William Bradford Bosley, for Respondents.

McFARLAND, J.—This is an action to recover possession of a part of a quartz mining claim called the "Belmont," together with damages for certain alleged trespasses committed thereon by the defendant, and to obtain an injunction to prevent the defendant from taking rock and gold from said claim, and from interfering with it in any way. The case was tried by the court without a jury; the court found all the material issues in favor of the plaintiffs, for whom judgment was rendered, and defendant appeals from the judgment, a bill of exceptions being a part of the record. The plaintiffs made a location of the Belmont mine on April 26, 1894. Their notice of location describes the mine as situated in Mariposa mining district, county of Mariposa, and state of California, one mile northeast of the Malone mine and mill; it states that the plaintiffs "have this day located and claim fifteen hundred linear feet along the course of this lead, lode, or vein of mineral bearing quartz, and three hundred feet in width on each side of the middle of said lead," etc., and further describes it as "commencing at a shaft on said vein or lode near the southerly bank of Bear creek, and running in a southerly direction on the course of the vein or lode fifteen hundred feet to a stake in a mound of rocks, with surface ground six hundred feet in width," and states that "the corners and side lines of said vein are marked by stakes in mounds of rock." The defendant claims a quartz mining claim called the "New Discovery," on the same lode, alleged by him to have been located on the twenty-fifth day of August, 1894; his notice of location describes his claim as commencing at a certain point on the lode and running northerly fifteen hundred feet; and as there is no question about the formal correctness of his location it need not be further noticed. The "New Discovery," however, overlaps the "Belmont" for a distance of several hundred feet; and the contest between the parties is as to this piece of the lode which is claimed by both.

The cardinal principle which governs the conflicting claims of appropriators of mining claims and other rights on the public domain is that, other things being equal, the prior locator prevails—*qui prior est tempore potior est jure.* Therefore, as the location of the plaintiffs was prior to that of the defendant it must prevail, unless the location itself was fatally defective, or all rights under it were lost on account of subsequent occurrences. Defendant attacks the validity of plaintiffs' location mainly upon three grounds, to wit: That there was not sufficient evidence to warrant the court in finding (1) that the boundaries of the claim were sufficiently designated; (2) that a lode or vein had been discovered by the plaintiffs within the claim at the time the location was made; and (3) that the ground located was vacant government land subject to location.

1. No mining customs or rules obtaining in the Mariposa mining district were given in evidence; and the notice of location of each of the parties states upon its face that it is made "in compliance with the requirements of the Revised Statutes of the United States." Each of the notices was recorded, although that is not required by the United States statutes; but the notice of plaintiffs as recorded complies with the provision of the second sentence in section 2324 of the Revised Statutes of the United States, which requires that where a record is actually made there must be a reference to "some natural object or permanent monument as would identify the claim." The only contention of defendant on this point is, however, that the location of plaintiffs does not comply with the provision of the first sentence of said section 2324, to the effect that "the location must be distinctly marked on the ground so that its boundaries can be readily traced"; and the objection made by the defendant in this matter is that the plaintiffs, in making this location, did not put in new stakes to mark the boundaries, but referred to and used stakes which were standing on the ground and which had been put in by them on a former occasion. It appears that the plaintiffs had located the claim now called the "Belmont" several years prior to April, 1894, and had placed stakes with mounds of rock, etc., at each corner of the surface ground and at the centers of the end lines, and that when they concluded to make the second location, under which they now

hold, they found those stakes intact and adopted them, their notice of location referring to these stakes; and defendant contends that the location was invalid because plaintiffs did not actually put up new stakes. This contention is not maintainable. These stakes so distinctly marked the location on the ground that its boundaries could be readily traced; and this was all that the statute requires. As the stakes referred to already stood at the proper places, it would have been a useless work to have taken them out and put them in again, or to have replaced them with other stakes. The location was, in this respect, sufficient under the principles stated in *North Noonday Min. Co. v. Orient Min. Co.,* 6 Saw. 311; *Jupiter Min. Co. v. Bodie Con. Min. Co.,* 7 Saw. 96; *Seidler v. La Fave,* 5 N. Mex. 44, and cases there cited. In the last-named case the notice of the location of the Miners' Dream—the claim in contest— stated that the claim "commences at the northeast corner of the Iron King mine, and extends along the eastern boundary of the Iron King claim, in a southwestern direction to the southeastern corner of the Iron King mine"; thence, in various directions to the point of beginning; and it was held sufficient if there were, in fact, monuments at the northeast and southeast corners of the Iron King; and this was under a statute of New Mexico, which was much more stringent as to monuments than the United States statute.

2. We think that there was sufficient evidence to warrant the court in finding that the plaintiffs had discovered a lode before their location in 1894; although the plaintiffs, who seemed to have taken this fact for granted, could evidently have put the matter beyond a doubt by simply asking any one of their witnesses a direct question upon that subject. They, as before stated, had located this claim several years prior to 1894, and had done a good deal of work on it. They had sunk a shaft twenty-five or thirty feet deep, and had taken from it a considerable amount of quartz rock which formed a dump. The witness Heisser, who had worked for plaintiff, testified that some years before the last location he found rich rock on the south end of the claim, and informed one of the respondents of this fact, and warned him that the claim was jumpable, and that he afterward got rock both from the shaft and the dump to show

an expert.   The witness Moise, when testifying about measuring the claim, said: "I measured along the lode line about the middle of May.   I measured from the center of the shaft in Bear creek twelve hundred feet along the course of the vein, so far as I could judge its course; as the ground is all capped there is no rock in place at the surface.   I took my directions for the course of the vein from a line drawn from the shaft through two or three prospect holes on the northern end of the claim where the ledge is exposed"; and although this was after the location of 1894, still it has a bearing on the question, for the testimony is fairly susceptible of the meaning that the vein was exposed in the shaft, which plaintiffs had sunk several years before their second location.   The plaintiff Conway testified—indirectly, to be sure—to his knowledge of the vein at the time of the location, as appears from the following question and answer: "Q. What direction does the vein run upon which you posted this notice?   A. North and south."   The defendant himself, when on the witness stand, testified as follows: "Some work had been done south of the shaft in Bear creek in the direction of my tunnel that I know of in 1885 and '6.   It was done almost on my line in the direction of my shaft from the tunnel—between—on the vein.   I was there when the work was in progress in 1886.   At that time Mr. Conway and Mr. Heisser were working there.   That work was inside the boundaries of my claim, probably three hundred feet south of my north line.   The rock was gold bearing."   Now, there is no doubt whatever that there actually is, and, of course, at the date of the location was, a gold-bearing lode there—the appellant so avers in his answer, and proves by his testimony; and, considering all the evidence, we cannot say that the court was not warranted in holding that the rock taken by respondents and placed on the dump was not mere float rock, but rock taken from the lode which all admit to be there; and that, consequently, respondents knew of the existence of the lode when their location in 1894 was made.   The evidence on the point was, of course, not very direct and explicit, but it was sufficient to sustain the finding.

3.   There was sufficient evidence to justify the court in finding that the premises were vacant United States public land, sub-

ject to appropriation at the time of respondents' location, although here again the plaintiffs evidently could have made the matter clear by asking a direct question on this subject. Very little evidence on that subject is required as against a subsequent locator who asserts no title antedating his location. Appellant testified himself that at the time he made his location, which was only four months after that of respondents, the land was unoccupied by anybody, and was "vacant government land"; and the testimony of respondents shows that they had located and worked the mine several years before their location in 1894; that they had placed stakes around the claim and had sunk a shaft and taken out rock, and that when they went back there in April, 1894, they found the stakes, the shaft, and the claim in the same condition, substantially, in which they had left them, and there is no evidence or pretense that any person other than respondents and appellant ever occupied this land or set up any claim to it. This was sufficient to warrant the court in finding that the land was vacant; certainly it cannot be said that the court should have found otherwise on this point.

In addition to the foregoing points, appellant contends that respondents cannot maintain this action, because before its commencement they had conveyed whatever title they had to third parties, to wit, William S. Zeller, W. H. Moise, and T. P. Bisland. The evidence on this point consists of three written instruments, one of which is a contract between the parties by which the respondents agree to sell to said Zeller and others certain properties called the "Conway" and "Zimmerman" mining claims, for the sum of six thousand dollars, to be paid on or before the seventh day of April, 1898; another of which is a deed which on its face conveys said claims from respondents to said Zeller and others; and the third being a deed which purports to convey the said claims from said Zeller and others to the respondents. The three instruments were all executed at the same time and constitute parts of one transaction. The deed from the respondents to Zeller and others went into the possession of the latter, and the deed from Zeller and others to respondents was given to another party as an escrow, to be delivered to the respondents upon the failure of Zeller and others to comply with their part of the said contract. Appel-

lant contends that the first-named deed was actually delivered to Zeller and others, and passed to them absolutely the legal title. Respondents testified, however, that the giving of the deed into the possession of Zeller and others was not intended as an absolute delivery so as to pass title; and we think the court was warranted in holding that the three instruments construed together as forming one transaction constituted nothing more than a contract to convey—a mere option given Zeller and others to purchase the property within a stated time for a named amount. And this, we think, was a correct conclusion regardless of the fact that the instruments in question do not mention the "Belmont" mine.

The points above noticed are in their nature highly technical; but appellant makes another contention which, if maintainable, would go somewhat to the merits. It appears that at one time the respondent Conway, after some conversation between him and the appellant about their conflicting interests, put three stakes across the Belmont location some considerable distance north of the line claimed by respondents as their southern line; and it is contended by appellant that respondents were estopped thereby from claiming any ground south of the line. We do not think, however, that this contention can be maintained. The other respondent, Zimmerman, Conway's cotenant, never saw or heard of these stakes; and while Conway's explanation of the reasons why he put them there is somewhat unsatisfactory, he himself shortly afterward repudiated them, and we do not think that the evidence shows the elements which constitute an estoppel. Moreover, appellant's answer shows that he claimed that the boundaries of the "New Discovery" extended to their original limits and far north of these stakes set up by Conway, and in his testimony he admits that he did not consider himself bound by those stakes as his northern boundary, but claimed to the limits of his original location.

The court found that fifteen hundred feet running southerly along the ledge from respondents' northern stake and shaft, as described in their notice of location, would end a short distance north of what respondents claim to be their southerly end line, and confined the claim of the respondents to the actual fifteen

hundred feet, and in this we see no error.   There are no other points in the case which we deem necessary to discuss.

It is proper to say that this is an ordinary mining suit, where the rights of the parties against each other are alone to be considered.   It does not arise under section 2326 of the United States Revised Statutes, out of an application in the United States land office by one of the parties to obtain a patent and an adverse claim there filed by the other party, in which questions touching the right of a party as against the United States government may arise, and where the judgment should sometimes be against both parties to the contest.   (See *Jackson v. Roby,* 109 U. S. 440.)

The judgment appealed from is affirmed.

Van Dyke, J., Garoutte, J., Henshaw, J., and Harrison, J., concurred.