## WORTHEN *v.* SIDWAY.

### Opinion delivered February 27, 1904.

1. MINES—LOCATION.—The requirements of Rev. Stat. U. S., § § 2324, 2329, relating to the location of mining claims, are mandatory, and must be strictly complied with, and they apply with equal force to placer and lode claims. (Page 222.)

2. SAME—LOCATION OF BOUNDARIES.—Rev. Stat. U. S., § 2331, providing that where placer claims are upon surveyed lands, such claims shall conform, as near as practicable, to the legal subdivisions of public land surveys, does not dispense with the requirement of § 2324, *ib.*, that the location of a mining claim "must be distinctly marked on the ground, so that its boundaries can be readily traced," although the land has been surveyed, and the claim is for the whole of a legal subdivision. (Page 223.)

3. LOCATION OF CLAIM—NOTICE.—An attempt to locate a mining claim by posting a notice on a tree, in which there was claimed the exclusive right to hold, prospect and mine upon the west half of a certain quarter section, without any effort to mark the location on the ground so that its boundaries can be readily traced, was insufficient to entitle claimants to hold any title thereby. (Page 224.)

4. LOCATION OF CLAIM—TRANSFER.—A valid location of a mining claim has the effect of a grant from the government of a right to the exclusive possession of the lands located, and may be sold and transferred as other real estate. (Page 225.)

5. FAILURE TO DO WORK—FORFEITURE.—Under Rev. Stat. U. S., § 2324, requiring that a certain amount of labor shall be performed annually on each mining claim, and that, upon a failure to comply with such requirement, the claim shall be subject to relocation in the same manner as if no location had been made, provided that the original locators have not resumed work upon the claim before such relocation, *held,* that a failure of original locators to perform the required annual labor did not forfeit their claim if they resumed work before any third party made a valid relocation. (Page 226.)

6. ABANDONMENT OF CLAIM—EFFECT.—Where one interested with others in the location of a mining claim abandoned his interest and set up a claim in opposition thereto, his interest did not revert to the government, but was acquired by the other cotenants by compliance with the statutes. (Page 227.)

Cross appeals from Newton Circuit Court.

ELDRIDGE G. MITCHELL, Judge.

Action by W. B. Worthen and others against H. T. Sidway and others. Plaintiffs have appealed. Reversed in part and affirmed as to residue.

*John B. Jones,* for appellants.

In an adverse title each party must prove his own title. 17 Col. 243; 2 Pac. 920. Title to mining claims on the public domain may be acquired by the statute of limitations. Rev. St. U. S. § 2332; 104 U. S. 636; Barringer & Adams, Laws of Mines and Mining, 568; 8 Fed. 865; 3 Sawyer, 634; 9 Nev. 240; 83 Cal. 302; 9 Nev. 240; 104 U. S. 279; 114 Cal. 100; 42 Fed. 99; 17 Cal. 44, 108; 34 Ark. 193; 30 Ark. 655; 40 Ark. 243; 42 Vt. 473; 18 How. 50; 144 U. S. 509; 148 U. S. 301. A mining claim in the actual possession of one claiming under color of title in good faith under the mining laws, rules and customs is not open to relocation. 100 U. S. 256; 96 U. S. 513; 104 U. S. 279; 20 Cal. 209; 31 Cal. 390; 30 Cal. 355; 7 Nev. 219; 99 U. S. 262; 11 Fed. 125; 10 Sawyer, 246; 4 Fed. 705; 2 Pac. 919; Lindley, Mines, § 217. Forfeiture does not arise from failure to do annual work. It requires the intervention of a third party and a relocation. 1 Morrison, Min. Rep. 536. Forfeitures are odious in law and must be clearly proved by the party alleging it. 130 U. S. 301. An adverse locator must show forfeiture of his adversary affirmatively. 1 Fed. 522; 104 U. S. 279; 58 Fed. 293; 25 Pac. Rep. 785; Lindley, Mines, 48; 1 Nev. 215; 130 U. S. 291. The failure to mark the locations as required is absolutely fatal to its validity. Barringer & Adams, Mines and Mining, 228, 234, 477; Lindley, Mining, § 454; 160 U. S. 318; 58 Fed. 114; 4 Fed. 704; 58 Fed. 113; 78 Cal. 593; 83 Cal. 296. Posting notices not sufficient. Barringer & Adams, Mines and Mining, 235; 53 Cal. 217. Omitting to refer to some natural object makes the certificate void. 8 Col. 586; 46 Pac. 661; 27 Pac. 726; 30 Pac. 364; 13 Nev. 462. An easement may be abandoned. 110 N. Y. 595; 16 Wend. 539. Without the discovery of mineral, there can be no location. 13 L. D. 86; 18 L. D. 81; 19 L. D. 568; 22 L. D. 409; 5 McCrary, 298; 115 U. S. 45.

*Pace & Pace,* for appellees.

To determine the possessory right, each party must rely upon the strength of his own title. 115 U. S. 50. The location made

by Cantrell was a sufficient appropriation. 113 U. S. 568; 18 Wall. 271; 23 Wall. 374; 99 U. S. 265; 95 U. S. 760; 6 Pet. 29; 12 Wall. 177; 16 Wall. 240; 107 U. S. 402; 130 U. S. 291; 37 Pac. 480; 95 Fed. 911; 13 Nev. 442; 160 U. S. 303; 183 U. S. 563; 1 Mont. 235; 2 Idaho, 244; 70 Fed. 455. Appellants forfeited their right to enter and mine the land by the failure to do assessment work. Rev. Stat. U. S. § 2324; 111 U. S. 350; 65 Cal. 565; 3 Utah, 159; 7 Col. 178. Appellants failed to resume work in 1899. 104 U. S. 279; 16 Mont. 234; 21 L. D. 446; 127 U. S. 471; 1 Morrison, Min. Rep. 114; 29 L. D. 62; 163 U. S. 445; 65 Cal. 565; 4 Mont. 550; 20 Cal. 198. Appellees are entitled under their cross-complaint to a decree for a writ of possession. 160 U. S. 318; 1 Fed. 522; 78 Cal. 539; 83 Cal. 296; 70 Ark. 525; 12 Ark. 296; 96 U. S. 513.

*John B. Jones,* for appellants in reply.

No specific marking is required. 60 Fed. 531. The notices were a sufficient location. 160 U. S. 303. The record of the claim must refer to the object. 11 Fed. 677; 130 U. S. 291. In general, the rules applicable to real property apply to mines. 42 Fed. 99; 104 U. S. 636; 152 U. S. 505. One can hold as many locations as he can purchase, and rely upon his possessory title. 104 U. S. 636; 25 Fed. 337.

BATTLE, J. The west half of the northeast quarter of section 31, township 16 north, range 21 west, is in Newton county, in this state, and is mineral lands, containing zinc, a valuable metal for commercial purposes. On the 21st of June, 1889, W. S. Allen, W. H. A. Reeves, A. J. Nicholson and J. B. Hayles located a placer mining claim on the west half of the northwest quarter of the northeast quarter of said section 31. On the 12th day of July, 1889, S. E. Allen, F. E. Nicholson and E. C. King located a placer mining claim upon the west half of the southwest quarter of the northeast quarter of the same section; and on the 23d of July, 1889, Ida King, W. S. Allen and Lucinda Reeves located a placer mining claim upon the east half of the southwest quarter of the northeast quarter of the same section. In December, 1889, W. B. Worthen, W. G. Whipple, M. F. Locke and John B. Jones contracted with said locators to purchase said locations or claims,

except one-fifth interest therein claimed by H. T. Sidway, with others, for the sum of $5,000, and agreed to give T. M. Gibson and W. S. Allen, each, one-seventh interest therein, in consideration that they had assisted in making the purchase, and that they would look after and superintend the mining on the claims. On the 10th of April, 1890, said locators conveyed the claims located by them to T. M. Gibson in trust for himself, Worthen, Whipple, Locke, Jones and Allen; and on the 1st day of December, 1890, Gibson conveyed the same to himself and the others, for whom he held in trust. Gibson afterwards abandoned his interest, and left the state, leaving Worthen, Whipple, Locke, Jones and Allen sole owners, whom, for convenience, we shall hereafter call "Worthen and others."

On the 8th day of July, 1889, C. H. Lombard, F. M. Garvin and J. E. Andrews attempted to locate a lode claim on a portion of the lands upon which Worthen and others held claims, and upon the 10th day of July, 1899, attempted to make another location of a lode claim upon another portion of the same lands. They took possession, and did considerable work upon their claims. In this suit the court held that their claims were void, and they did not appeal.

H. T. Sidway acquired an interest in the claims of Lombard, Garvin and Andrews, and contracted with them to resist and aid in resisting the claims of Worthen and others; and thereafter rendered no assistance in holding or maintaining or developing the claims of Worthen and others; and in reply to a letter of John B. Jones, asking him to assist in protecting the same, wrote the following letter:

"CHICAGO, August 15, 1899.

"*John B. Jones, Esq., Little Rock, Ark.*:

"Dear Sir—I have just returned from Arkansas trip, and received your letter after I left P. Creek. When I arrived I found Garvin and Lombard men at work, and that they have done a considerable amount. On investigation I found that they had complied fully with the law, and it appeared to me that they had a very strong case. All of which would have been prevented had you not advised Allen to meet Reed, instead of locating a lode claim as I wrote and advised him to do. After going over the ground thoroughly, I concluded to accept the proposition made by

Garvin and Lombard, and advised Allen to do the same. Our agreement with them of course affects our interest only, and we are therefore out of the fight.

> "Yours truly,
> "H. T. SIDWAY."

W. S. Allen also acquired an interest in the Lombard, Garvin and Andrews claims, and made the same contract with them that Sidway made. But he soon repented, repudiated his contract with them. and entered into performance of his contract with Worthen and others, with their consent, and assisted in improving, developing and maintaining their claims.

On the 6th day of July, 1889, M. C. Cantrell, T. R. Cantrell, J. B. Moss and W. A. Bradley, whom, for convenience, we shall hereafter call "Cantrell and others," attempted to locate a placer mining claim upon the west half of the northeast quarter of said section 31, and posted on a tree on the land the following notice:

> "Notice is hereby given that the undersigned claimant, under the Revised Statutes of the United States, section 2331, chapter 6, title 32, act of May 10, 1872, and legislation supplemental thereto, and the local laws of Newton County Mining District of Arkansas, has this day located and by possessory right claims the exclusive right to hold, prospect and mine upon the following described land lying in the county of Newton and state of Arkansas, towit: west half, northeast quarter of section 31, township 10 north, range 21 west, including all leads, lodes, dips, spurs and angles, with a view to obtaining a patent to the same. The name of this claim is the Independence, Lot No. —. All persons are notified not to trespass on the same.

> "Located this 6th day of July, 1899.
> "M. C. CANTRELL, T. R. CANTRELL,
> J. B. MOSS, W. A. BRADLEY.

"Witnesses: A. J. HUDSON, JESSE HICKMAN."

Further than this they traced no boundary lines, and performed only $20 worth of work on their claim.

On the 11th day of December, 1899, W. S. Allen, S. E. Allen, John B. Jones and Oza Andrews, native-born citizens of the United States, whom, for convenience, we shall hereafter call "Allen and others," located a placer mining claim upon the east

half of the northwest quarter of the northeast quarter of said section 31, and upon other lands, and surveyed the same, and at each corner made a monument by piling rocks and driving stakes two and a half inches in diameter and five or six feet in height, and posted upon a tree at one of the corners the following notice:

"We, the undersigned, having complied with the requirements of chapter 6, title 52, of the Revised Statutes of the United States, and the local customs and laws of Newton County Mining District, have located, to occupy, prospect, mine and hold by possessory right, the following described lands, towit, the northeast quarter of the northeast quarter of section 31, and the east half of the northwest quarter of northeast quarter of said section 31, both in township 16 north, range 21 west; also the east half of the southeast quarter of the northeast quarter of said section 31. The junction of Panther creek and Bowlder creek is in the southwest corner of said tract, and Cannon creek on east line of the tract runs in a southwest direction through the southeast portion of the tract, and flows into Panther creek, a short distance south at the junction of Panther creek. There is a large sand bowlder near the southwest corner of the tract, one chain and fifty links east of the southwest corner of the tract. The point of discovery of mineral on the tract is about 170 feet, a little east of north of said sand bowlder, at a cut made in the point of the hill. We caused a copy of this notice to be placed on a tree close to said sand bowlder; also drove a large stake at each corner of the land, and placed stones around it, and blazed trees around the tract on the lines, with a view of obtaining a patent to the same. All persons are notified not to trespass on the land. Name of this claim is 'Allen.'

"Dated this 11th day of December, 1899.

"W. S. ALLEN, S. E. ALLEN,
JOHN B. JONES, OZA ANDREWS.

"Witnesses: WM. E. ERWIN, JAMES BLACKBURN."

Cantrell and others attempted to prove in this suit that Worthen and others had failed to do upon their claims the annual work required by the statute, and had not thereafter resumed work in good faith before they located their claims. But it was shown that they did considerable work before that

time, and thereafter in the year 1899 performed $500 worth of labor upon their claims, and $500 or $600 worth of work in the year 1900.

The following decree was rendered in this suit:·

"It is therefore by the court considered, ordered and adjudged that the said M. C. Cantrell, T. R. Cantrell, J. B. Moss and W. A. Bradley do have and retain the said east half of the northwest quarter of the northeast quarter of said section 31, township 16 north, range 21 west, and that the other plaintiffs and defendants herein take no interest therein. * * *

"It is further by the court considered, ordered, adjudged and decreed that the said John B. Jones, W. B. Worthen, W. G. Whipple and M. F. Locke do have and recover and retain possession of an undivided four-twenty-fifths each in and to the west half of the northwest quarter of the northeast quarter, and the west half of the southwest quarter of the northeast quarter, and the east half of the southwest quarter of the northeast quarter, and the east half of the southeast quarter of northwest quarter of said section 31, township 16 north, range 21 west.

"That inside of the lines surveyed by lodes aforesaid (that is, the boundary lines of claims of Lombard, Garvin, and Andrews, which were upon and within the claims of Worthen and others) that the said J. E. Andrews is the owner and entitled to an undivided nine two-hundredths in and to all of the said land above described inside of said lines surveyed for lodes (said boundaries), and that the said F. M. Garvin and C. H. Lombard do have and recover inside of said lines surveyed for lodes (said boundaries) nine one-hundredths each; that the said H. T. Sidway have and retain eight one-hundredths, and that W. S. Allen do have and retain an undivided nine twenty-fifths in all of said lands inside of the lines surveyed for lodes as aforesaid (said boundaries), and that, outside of said lines surveyed for lodes aforesaid on the land last above described, the said W. S. Allen do have and retain four twenty-fifths of said lands, and that the said H. T. Sidway do have and retain an undivided one-fifth thereof; that said M. C. Cantrell, T. R. Cantrell, J. B. Moss and W. A. Bradley, defendants, take no part of said described lands."

Worthen and others, Cantrell and others, and Allen and others appealed.

The validity of the location of the mining claims by the grantors of Worthen and others is not denied or questioned. We shall therefore treat them as valid.

Was the location of a mining claim by Cantrell and others. valid? They attempted to make a location by posting a notice on a tree, in which they claimed the exclusive right to hold, prospect and mine upon the west half of the northeast quarter of section 31, township 10 north, range 21 west. No effort was made to distinctly mark the location on the ground so that its boundaries can be readily traced. The notice did not contain "such description of the claim or claims located by reference to some natural or permanent monument as will identify the claim." Was their claim located sufficiently to entitle them to hold the same?

Section 2324 of the Revised Statutes of the United States provides: "The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground so that its boundaries can be readily traced. All records of mining claims hereafter shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

And section 2329 of the same statutes is as follows: "Claims usually called 'placers,' including all forms of deposits, excepting veins of quartz, or other rock in place, shall be subject to entry and patent under like circumstances and conditions, and upon similar proceedings, as are provided by law for vein or lode claims; but where the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands."

It has generally been held by courts that these statutes are mandatory, and that in the location of mining claims their requirements must be strictly complied with (*North Noonday Mining*

Co. v. *Orient Mining Co.,* 6 Sawyer, 299; *Doe* v. *Waterloo Mining Co.,* 44 U. S. App. 204; *Erwin* v. *Perego,* 93 Fed. Rep. 608; 20 Am. & Eng. Enc. of Law (2d Ed.), 713, and cases cited) ; and that they apply with equal force to placer and lode claims. Section 2329, Rev. Stat. U. S.; *McCann* v. *McMillan,* 129 Cal. 350; *Sweet* v. *Webber,* 7 Col. 443; *McDonald* v. *Montana Wood Co.,* 14 Mont. 88; *North Noonday Mining Co.* v. *Orient Mining Co.,* 6 Sawyer, 299; 20 Am. & Eng. Enc. of Law (2d Ed.), 714, and cases cited.

In order to acquire a mining claim of any description, its "location must be distinctly marked on the ground, so that its boundaries can be readily traced." The marking on the ground may be any physical marks placed or natural object already there, which of themselves, or in connection with writings, signs or other things· upon the ground, will tend to inform one seeking to identify the claim as to the quantity and identity of the land claimed. *North Noonday Mining Co.* v. *Orient Mining Co.,* 6 Sawyer, 299; *Conway* v. *Hart,* 129 Cal. 480; *Golden Fleece Gold, etc., Mining Co.* v. *Cable Consol. Gold, etc., Mining Co.,* 12 Nev. 312; *Gleeson* v. *Martin White Mining Co.,* 13 Nev. 442. Such physical marks or natural objects may be stakes  driven in the ground, stone monuments, blazed trees, confluences of streams, mining shafts, mountain peaks, crossing of roads, and streams. *Hammer* v. *Goldfield Mining Co.,* 130 U. S. 291; *Bennett* v. *Harkrader,* 158 U. S. 442; 20 Am. & Eng. Enc. of Law (2d Ed.), 719, and cases cited.

*McKinley Creek Mining Co.* v. *Alaska U. S. Mining Co.,* 183 U. S. 563, is a good illustration of what is a sufficient marking on the ground. In that case one Cahoon found gold in a creek, and located a claim by posting notices upon a stump in the creek, one of which is as follows: "Notice is hereby given that I, the undersigned, have this 6th day of October, 1898, located a placer mining claim, 1,500 feet running with the creek, and 300 feet on each side from the center of the creek, known as McKinley creek, in Porcupine river. This claim is the extension of W. A. Chisholm claim on about 1,800 feet from falls above Porcupine river, in the district of Alaska." The court said: "These notices constituted a sufficient location. The creek was identified, and between it and¹ the stump there was a definite relation which,

combined with the measurement, enabled the boundaries of the claim to be readily traced;" citing *Haws* v. *Victoria M. Co.*, 160 U. S. 303.

It is, however, contended that the requirement as to location of a placer claim by marks on the ground, so that its boundaries may be readily traced, does not apply where the land has been surveyed, and the claim is for the whole of a legal subdivision. This contention is based upon section 2331 of the Revised Statutes of the United States, which provides: "Where placer claims are upon surveyed lands, and conform to legal subdivisions, no further survey or plat shall be required, and all placer mining claims located after the tenth day of May, eighteen hundred and seventy-two, shall conform as near as practicable with the United States system of public land surveys and the rectangular subdivisions of such surveys." This "further survey or plat" has reference to the survey and plat required to be made when an application for a patent to the land located is filed, according to section 2325, which is, in part, as follows: "A patent for any land claimed and located for valuable deposits may be obtained in the following manner: Any person, association, or corporation athorized to locate a claim under this chapter, having claimed and located a piece of land for such purposes, who has, or have, complied with the terms of this chapter, may file in the proper land office an application for a patent, under oath, showing such compliance, together with a plat and field notes of the claim or claims in common, made by or under the direction of the United States surveyor general, showing accurately the boundaries of the claim or claims, which shall be distinctly marked by monuments on the ground."

So much of section 2331 as provides that, where the lands have been previously surveyed by the United States, all placer mining claims located thereon shall conform to the legal subdivision of the public lands, is simply a direction as to where the claimant shall run the exterior lines of his claim. It is not inconsistent with the requirement of the statute as to how the lines shall be marked or evidenced; nor does it dispense with, or answer the purpose of, such requirement. The language of the statute is: "The location must be distinctly marked on the ground, so

that its boundaries can be readily traced." The intention of this statute is that the boundaries shall be so designated by marks that they can be ascertained by an inspection of the ground, without the aid of a surveyor, and can be readily traced by such marks. As said in *White* v. *Lee,* 78 Cal. 593: "The men for whose information the boundaries are required to be marked wander over the mountains with a very small outfit. They do not take surveyors with them to ascertain where the section lines run, and ordinarily it would do them no good to be informed that a quarter section of a particular number had been taken up. They would derive no more information from it than they would from a description by metes and bounds, such as would be sufficient in a deed. For the information of these men, it is required that the boundaries shall be 'distinctly marked upon the ground.' The section lines may not have been 'distinctly' marked upon the ground, or the marks may have become obliterated by time or accident. And to say that the mere reference to the legal subdivision is of itself sufficient would, in our opinion, defeat the purpose of the requirement." *Anthony v. Jillson,* 83 Cal. 296; 1 Lindley, Mines (2d Ed.) § 454, and cases cited; Barringer & Adams, Mines and Mining, 477.

It follows, then, that the location of Cantrell and others was invalid, and that they acquired no rights thereby.

"A valid location in compliance with the requirements of law has the effect of a grant from the government of the right to the exclusive possession of the lands located. It invests the locator with an estate which, for the time being, at least, and until divested by one of the means authorized by statute, or the happening of one of the events working divestiture, is, except in name only, an estate of inheritance to all intents and purposes. * * * It is property in the highest sense of the term, and like property in general may be sold, transferred, or mortgaged, and upon the death of the locator will pass by descent to his heirs." *Gwillim* v. *Donnellan,* 115 U. S. 45; *Forbes* v. *Gracey,* 94 U. S. 762; *Belk* v. *Meagher,* 104 U. S. 279; *Noyes* v. *Mantle,* 127 U. S. 348; *Sullivan* v. *Iron Silver Mining Co.,* 143 U. S. 431; *Manuel* v. *Wulff,* 152 U. S. 505; *Sullivan* v. *Iron Silver Mining Co.,* 109 U. S. 550; 20 Am. & Eng. Enc. of Law (2d Ed.), 724, 725, and

S C—8

cases cited. In this case Worthen and others acquired by purchase the rights and interest of their grantors, the original locators, in the land claimed by them.

The property acquired by the locator or his assigns is, however, upon condition. Section 2324 of the Revised Statutes of the United States provides, among other things, as follows: "On all claims located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims located prior to the tenth day of May, eighteen hundred and seventy-two, ten dollars' worth of labor shall be performed or improvements made by the tenth day of June, eighteen hundred and seventy-four, and each year thereafter, for each one hundred feet in length along the vein until a patent has been issued therefor; but where such claims are held in common, such expenditure may be made upon any one claim; and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location."

Under this statute the claim or mine becomes subject to relocation whenever the locator, his heirs, assigns or legal representatives, shall fail to perform annual labor thereon as required by the statute. But there will be no complete forfeiture until a third party acquires title to the same. *Little Gunnell Gold Mining Co.* v. *Kimber,* 1 Morrison, Mining Rep. 536; *Oscamp* v. *Crystal River Mining Co.,* 19 U. S. App. 18. Until all acts necessary to make a valid relocation are performed, the locator, his heirs, assigns, or legal representatives, may resume work upon the claim and prevent forfeiture. *Belk* v. *Meagher,* 104 U. S. 279; *McCormick* v. *Baldwin,* 104 Cal. 227; *Holland* v. *Mt. Auburn Gold Quartz Mining* Co., 53 Cal. 149; *Gonu* v. *Russell,* 3 Mont. 358; *Lakin* v. *Sierra Buttes Gold Mining Co.,* 25 Fed. Rep. 337. But the work must be resumed in good faith, and be prosecuted with reasonable diligence until the requirement for annual labor is satisfied. *Buffalo Zinc & Copper Co.* v. *Crump,* 70 Ark. 525;

*Honaker* v. *Martin,* 11 Mont. 91; *Hirschler* v. *McKendricks,* 16 Mont. 211; 20 Am. & Eng. Enc. of Law, 738 and 739, and cases cited.

It is contended that Worthen and others failed to perform the annual labor required by the statute. If this be true, it avails nothing in this case, because it was shown that they thereafter, and before any third party made a valid relocation, resumed work in 1899, and did work on their claims of the value of $500, more than the law required. They thereby saved their rights to the claims until another failure to perform the necessary work, and none was shown.

The location of Allen and others upon the east half of the northwest quarter of the northeast quarter of section 31 was made according to law, and as to Cantrell and others is a valid claim.

W. T. Sidway abandoned his interest in the claims held by Worthen and others. He entered into a contract with Lombard, Garvin and Andrews, and set up a mining claim which was inconsistent with, and in opposition to, the claim of Worthen and others, and thereafter failed and refused to assist in any way in holding and maintaining the latter claims, and when requested to do so said: "We are therefore out of the fight," evidently meaning he had no interest in the claims of Worthen and others, and had abandoned the same, as shown by his subsequent acts.

When Sidway abandoned his interest, it did not revert to the government. The law does not recognize the acquisition from the government of fractional parts of mining claims. Each claim must be located and acquired as a whole. The assessment work required to be done is entire. One of the owners cannot do his part, and thereby save his part. The result is, if one cotenant abandons his interest, it passes out, and the other cotenants acquire the entire claim by compliance with the statutes.

As to W. S. Allen, the facts are different. He repudiated his contract with Lombard, Garvin and Andrews soon after it was made, regained his interest in the claims of Worthen and others with their consent, and thereafter entered into and continued and still continues the performance of his contract with them. He still holds his interest.

So much of the decree in this case as is according to this opinion is affirmed. The remainder is reversed, and the cause is remanded, with instructions to the court to enter a decree in accordance with this opinion.

