SMITH et al. v. CASCADEN et al.

(Circuit Court of Appeals, Ninth Circuit. November 1, 1906.)

No. 1,313.

MINES AND MINERALS—MINING CLAIMS—NOTICE OF LOCATION.

Where it was shown that under the system of locating placer mining claims in Alaska the one first discovered upon a gulch or creek is generally called "Discovery Claim," and other claims are numbered from such claim up or down the gulch or stream, and that it is customary in a certain locality to give to side or bench claims the same numbers as those upon the creek, with the addition of a letter of the alphabet, as "A," "B," or "C," to designate the tiers back from the creek claims, a recorded notice of location of a claim in such locality, which describes it as "13 A. Below Discovery on Cleary creek," is sufficient under Rev. St. § 2324 [U. S. Comp. St. 1901, p. 1426], which requires the notice to contain "such a description * * * by reference to some natural object or permanent monument as will identify the claim."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mines and Minerals, § 46.]

Ross, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska.

J. C. Cambell, W. H. Metson, and McGinn & Sullivan, for appellants.

Miller, West & De Journel, T. C. West, and Hugh O'Neill, for appellees.

Before GILBERT and ROSS, Circuit Judges, and DE HAVEN, District Judge.

DE HAVEN, District Judge. This is an action brought for the purpose of obtaining a decree that the plaintiffs are the owners and entitled to the possession of a certain mining claim situated on Cleary creek, in the Fairbanks mining district, Alaska, located on January 3, 1904, and described in the complaint as No. "13, below, on the second tier of benches on the right limit of Cleary creek." It appears from the evidence that plaintiffs' claim, as located on the ground, overlaps a portion of a mining claim which the defendant Cascaden located on December 2, 1902. The controversy involves the question of the ownership and right to the possession of the strip of land common to both locations. The decree of the District Court was in favor of the defendants. The plaintiffs have appealed.

1. It will be seen from the foregoing statement that the location under which the appellees claim was made prior to that of appellants, and must prevail, if valid; and, whether it was valid or not, is the general question presented by this appeal. The appellants contend that such location was not made in accordance with the laws of the United States, first, because the boundaries of the claim were not marked upon the ground, as required by the provisions of section 2324 of the Revised Statutes [U. S. Comp. St. 1901, p. 1426]; and, second, because the recorded notice of location was insufficient, in that it did not describe the claim located in such a manner that it could be identified. Whether this mining claim was properly marked upon the ground presents a pure question of fact, and in our opinion the finding of the District Court to the effect that the same was properly marked is sustained by the evidence.

2. The remaining contention of appellants, that the recorded notice of the location under which the appellees claim is insufficient, presents a more difficult question. It is provided in section 15 of the act of June 6, 1900, "making further provisions for a civil government for Alaska, and for other purposes" (chapter 786, 31 Stat. 327), that "notices of location of mining claims shall be filed for record within ninety days from the date of the discovery of the claim described in the notice," and section 2324 of the Revised Statutes provides that all records of mining claims "shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." The object of this statute, as stated by the Supreme Court in Hammer v. Garfield Mining Co., 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964, is "to secure a definite description—one so plain that the claim can be readily ascertained. A reference to some natural object or permanent monument is named for that purpose." The recorded notice under which the appellees claim is in these words:

"Notice is hereby given that the undersigned having complied with the United States mining laws and the local customs laws and regulations, has staked the following described placer mining ground in the Fairbanks district. I claim No. 13 A. Below Discovery on Cleary creek, 1,320 feet up and down stream and 330 feet each side of center stake, for placer mining purposes. D. H. Cascaden."

It is conceded by appellants that, under the system of locating mines in Alaska, the one first discovered "is generally called and known as the 'Discovery Claim,' and when the same is within a gulch or on a stream the claims are marked or numbered from 'Discovery Claim' up or down the gulch or stream." Cleary creek is a natural object; and there is no evidence tending to show that the Discovery claim referred to in the above notice was not a well-known and clearly defined mining claim on Cleary creek, and, in the absence of evidence showing that it was not, it must be presumed that the same was a well-known claim, with definite boundaries, and therefore a natural object or permanent monument, within the meaning of section 2324 of the Revised Statutes [U. S. Comp. St. 1901, p. 1426]. Hammer v. Garfield Mining Co., 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964.

The question then, is whether, in view of the customary mode of describing mining claims in the Fairbanks district in Alaska, a person with the information which this recorded notice gives could find the location of this particular claim on the ground with reasonable certainty by going to the natural and permanent objects referred to in the notice. If he could, the notice is sufficient. North Noonday Mining Co. v. Orient Mining Co. (C. C.) 1 Fed. 522. The answer to this question, it is thought, must depend upon the local meaning of the words "13 A. Below Discovery on Cleary creek"; and what that meaning is may be shown by parol evidence. The land in controversy is not a claim bordering upon Cleary creek, but is in the first tier of bench claims —that is, there is one claim between it and the creek, and that claim is known as "13 Below Discovery"—but the reference to Cleary creek in the notice does not necessarily import that the claim directly abuts upon that creek; and if the words "13 A. Below Discovery on Cleary creek," as commonly understood in the district where it is located, would identify the claim located as one in the first tier of bench claims in the mining district through which Cleary creek runs, and adjoining "13 Below Discovery" on that creek, then the notice is sufficient. The evidence in the record bearing upon this point is very brief. The locator Cascaden, in answer to the question, "Why did you call it A?" answered, "To designate it from the creek claim, which is also marked '13 Below Discovery, Cleary creek.'" Another witness, Buro, testified as follows:

"What is the custom, if you know of any, in staking a claim off, a creek claim that carries a number? How do you identify such a claim?

"A. Just give them a different name, either side claim, or name them by letters.

"Q. Have you seen it done in any other parts?

"A. Yes, sir; I have seen it done in Goldstream."

The only evidence which can be said to conflict with this is that of the witness Long, a deputy recorder of the Fairbanks recording district.

He testified that he was acquainted with the custom in that district in regard to staking bench or side claims, and he was then asked:

"Q. I will ask you to state how they are designated in notices of location?

"A. In regard to bench claims, they are known as bench claims in first tier, or side claims adjoining creek claims, if they are further than that, as second tier or third tier.

"Q. I will ask you if you know of any custom or usage whereby side claims or bench claims are designated by the letters of the alphabet?

"A. Well, only in fractions—for instance, if No. 1, appears to be greater than the law would permit of, it may be called as 'Discovery A.' or 'No. 1 A.' or 'No. 1 A. above or below,' just as it may occur."

Upon cross-examination, however, the witness said:

"Q. Do you know Goldstream?

"A. Yes, sir. * * *

"Q. Is it not a fact that there are some side claims with the number and the letter 'A'?

"A. Yes, sir; there is. Sometimes they designate them by the letter A, and sometimes as side claims and describe them as such.

"Q. What is the custom in that respect?

"A. Well, I presume there are more claims described by the lines than by the use of the letter A."

The testimony of this witness is certainly to the effect that side or bench claims are sometimes described by the use of the letter "A," as was done in the appellees' notice. The fact that such claims are more often described by lines and as side claims is not controlling, so long as in practice they are described in both ways, and this is known in the district where the claims are situated.

Our conclusion is that the recorded notice is sufficient, and the decree appealed from is affirmed.

ROSS, Circuit Judge (dissenting). The record shows without conflict that in the Fairbanks mining district, Alaska, where the piece of mining ground here in controversy is situated, there are what are called "creek" claims—that is to say, placer locations made on and along a creek—and next to them bench claims, called "first tier" or "side" claims, and next to them second tier bench claims, and so on. The evidence in the case further shows without conflict that the particular piece of ground in controversy is not in fact within any of the creek claims, but is on a bench and within one of the first tier or side claims. It is within the boundaries of the Owl mining location made on the 3d day of January, 1904, under which the appellants claim. The validity of this location does not seem to be questioned except on the ground that the particular piece of mining ground in dispute was included in a prior location made by the appellee Cascaden in 1902, and was not, therefore, open to location when attempted to be included in the Owl location. Therefore the principal question in the present case relates to the Cascaden location.

The court below held it to be valid. Was it right in so holding? Assuming that the notice posted by Cascaden on the ground was sufficient, was the record of it sufficient for the identification of the claim? Neither the act of Congress of 1866 nor of 1872 required such notices to be recorded, and in respect to the acts of the locator upon the ground

the requirement of the United States statute is that "the location must be distinctly marked on the ground so that its boundaries can be readily traced." Rev. St. § 2324 [U. S. Comp. St. 1901, p. 1426]. The same section of the United States statute expressly confers upon the miners of each mining district the power to make regulations not in conflict with the laws of the United States or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, and amount of work necessary to hold possession of a mining claim, subject to the requirement in respect to so marking the location as that its boundaries may be readily traced. And it has been uniformly held by the courts that the respective states and territories may make like rules and regulations not in conflict with any law of the United States upon the subject. As a result, in some states and territories, and in some mining districts, the notice of location is required to be recorded and in some it is not. But, whenever required, the express declaration of section 2324 of the Revised Statutes is that such record "shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." It is manifest, therefore, that the court in the case of Gird v. California Oil Co. (C. C.) 60 Fed. 531–536, was quite right in holding, as it did, "that the record of a mining claim, where one is required, is intended to contain a more exact and specific description of the claim than the notice posted upon it." The statute itself admits of no other meaning; for, in respect to the posting upon the ground, the statutory requirement is that "the location must be distinctly marked on the ground so that its boundaries can be readily traced," but that any record thereof that is made "shall contain the name or names of the locators, the date of location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." The reason for the distinction thus made between the notice posted on the claim and the record of such notice is well stated in the case of Gleeson v. Mining Co., 13 Nev. 465, where the Supreme Court of Nevada said:

"There can be no question that the original paymaster's notice was all that the law requires. The only objection to it is that it did not contain in itself a description of the claim by reference to some natural object or permanent monument. It was not necessary that it should. It is only the record of the claim that is required to contain such a description; and there are excellent reasons for making the distinction between the notice and record in this particular: A notice is generally, and for safety ought always to be, posted immediately upon the discovery of the vein, before there is any time to survey the ground and ascertain the bearings and distances of natural objects or permanent monuments in the neighborhood; and, besides, the claim referred to by the notice is always sufficiently identified by the fact that it is posted on, or in immediate proximity to, the croppings. A notice claiming location on 'this vein' has only one meaning. But the notice is exposed to the danger of removal by adverse claimants or destruction by the elements, and for permanent evidence of the location its record is provided for. The record, if it consisted of a mere copy of the notice, would not identify the claim and there would be an opportunity, as well as a temptation, to the locators upon the discovery of a more valuable mine in the vicinity to prove by perjured witnesses that their notice was posted on that mine. The floating of claims was by no means an infrequent occurrence prior to the act of 1872, and, if

such attempts were seldom successful, they were always vexatious, and often the means of levying heavy blackmail. It was on this account that the record (not the notice) was required to contain 'such a description of the claim or claims, located, by reference to some natural object or permanent monument, as will identify the claim.' Revised Statutes, § 2324. It is a sufficient compliance with this provision of the law if a description of the locus of the claim is appended to the notice when it is recorded."

It is plain, therefore, that inasmuch as in the District of Alaska notices of mining locations are by a statute of the United States (31 Stat. 321, c. 786) required to be recorded within 90 days from the date of discovery, which record is also required by a United States statute to contain a description of the claim located "by a reference to some natural object or permanent monument as will identify the claim," it is essential to the validity of such a location in Alaska that the record thereof contain such a description "by reference to some natural object or permanent monument as will identify the claim." Can that be properly affirmed of the description contained in the record of the Cascaden location, which reads:

"I claim No. 13 A. Below Discovery on Cleary creek, 1,320 feet up and down stream and 330 feet each side of center stake for placer mining purposes."

This notice is much more indefinite and uncertain than those involved and sustained in the case of McKinley Mining Co. v. Alaska Mining Co., 183 U. S. 563–570, 22 Sup. Ct. 84, 46 L. Ed. 331. There the creek was identified, the notice posted on a stump in the creek, in which the locator declared that he claimed 1,500 feet running down the creek and 300 feet on each side of the center of the stream. That was the notice posted on the ground. No record of the location appears to have been made in the case, nor to have been there required. Therefore the Supreme Court in that case neither determined nor considered the sufficiency of the description as a record of the location. In the case now before us, however, we have to consider and determine the sufficiency of the record of a location, in which, if it can be properly assumed that Cleary creek was a well-known stream or otherwise identified, there is nothing to indicate whether the ground claimed is on both sides of the creek or on one side of it only, and, if on one side only, then which side. It claims "1,320 feet up and down stream and 330 feet each side of center stake"; but nothing is said to indicate the location of the stake either with reference to Cleary creek or any other natural object or permanent monument or in any manner whatever. But, even if this record could be held to be a valid notice of location of a creek claim, it would not aid the appellees, for the reason that the undisputed evidence shows that the particular piece of ground in controversy is not within any creek claim, but is within the first tier of bench claims. This clearly appears from Cascaden's own testimony. Yet no one, in my opinion, can read the record of his location without coming to the conclusion that he was thereby claiming what is known as a "creek" claim; for the notice expressly states that the ground he claims is "on Cleary creek, 1,320 feet up and down stream and 330 feet each side of center stake." The additional statement in the record notice that the claim is No. 13 A. Below Discovery but adds confusion to the uncertainty and indefiniteness of the notice. Cascaden being asked, "Why did you call it

A. ?" answered, "To designate it different from the creek claim, which is also marked '13 Below Discovery.' " Any one going to the record would, therefore, find the express declaration of the locator that the ground he claimed was "on Cleary creek, 1,320 feet up and down stream and 330 feet each side of center stake," and that it was also "No. 13 A. Below Discovery." If the letter "A" necessarily meant that the claim was not on the creek, but was a bench claim, then, manifestly, the record would be wholly inconsistent and uncertain, and could not, therefore, enable any one to identify the ground claimed by the description given. But the testimony of the deputy recorder of the Fairbanks mining district, John L. Long, is to the effect that, according to the prevailing custom in the district, it is as a rule only in the case of fractions that the side or bench claims are designated by the letters of the alphabet, and that while side claims are sometimes designated by the letter "A," the witness, in answer to the question, "What is the custom in that respect?" answered, "Well, I presume there are more claims described by the lines than by the use of the letter 'A.' " The direct testimony of that witness in regard to the custom prevailing in the district is as follows:

"Q. I will ask you whether or not you are acquainted with the custom prevalent in the Fairbanks recording district, District of Alaska, in regard to staking bench claims, or 'side' claims, as they are commonly called?
"A. Yes, sir; I am.
"Q. I will ask you to state how 'they are designated in notices of location.
"A. In regard to bench claims, they are known as 'bench claims on first tier' or side claims adjoining creek claims. If they are further than that, as 'second tier' or 'third tier.'
"Q. I will ask you if you know of any custom or usage whereby side claims or bench claims are designated by the letters of the alphabet?
"A. Well, only in fractions. For instance: If No. 1 appears to be greater than the law would permit of, it may be called as 'Discovery A.' or 'No. 1 A.' or 'No. 1 A. above or below,' just as it may occur."

I can but regard the record of the location under which the appellants claim as falling far short of meeting the statutory requirement that it shall contain such a description by reference to some natural object or permanent monument as will identify the claim.

The record further shows that the Owl claim, including the piece of ground in controversy, was located in the name of the appellant Smith by Pyne acting for him. There is evidence to the effect that Pyne was a mining partner of Smith. Afterwards Pyne, as "agent for and also including" Smith, entered into an agreement with the appellant Robarts and one Beers by which Robarts and Beers agreed to sink a shaft upon the Owl claim to bedrock for an undivided one-half interest therein. They started a shaft on the particular piece of ground in dispute, and Beers' interest in the contract then passed to the appellant Sorenson. When the shaft was down about 40 feet, Cascaden notified Pyne that the shaft was being sunk on his ground, and that, if the work was not stopped, he would commence suit to enjoin its prosecution. As a result a written agreement was entered into between Cascaden and Pyne and Robarts, and which was also signed, "W. R. Smith, by C. C. Pyne," in which Cascaden's right to the ground in controversy was, among other things, acknowledged, which acknowledgment, however, Pyne,

Robarts, Smith, and Sorenson undertook within a few days by written notice to Cascaden to withdraw and cancel. On behalf of the appellees it is contended that the acknowledgment so made of Cascaden's right to the disputed ground operates as an estoppel against the appellants. There are several reasons why that is not so. First, because no such estoppel was pleaded by the defendants. Hanson v. Chiatovich, 13 Nev. 395; Clarke v. Huber, 25 Cal. 594; Davis v. Davis, 26 Cal. 40, 85 Am. Dec. 157; McKeen v. Naughton, 88 Cal. 462, 26 Pac. 354; Page v. Smith, 13 Or. 410, 10 Pac. 833; Conway v. Hart, 129 Cal. 487, 62 Pac. 44; Encyclopedia of Pleading & Practice, vol. 8, p. 7. Secondly. Because no written or other authority was shown in Pyne to disclaim any title that appellant Smith might have. The statute of Alaska in respect to such a matter is that "an agreement concerning real property made by an agent of the party sought to be charged, unless the authority of the agent be in writing," is void. Carter's Ann. Codes of Alaska, § 1044, subd. 7, pt. 4, p. 355, and section 1046, pt. 4. And, lastly, because it does not appear that Cascaden parted with any right or gave any consideration for the acknowledgment, almost immediately withdrawn, or that he acted upon it in any way.

In respect to the question of possession, the case shows that the appellants were in the possession of the ground in controversy, actually and actively engaged in sinking the shaft, at the time of bringing the action.

I think the judgment should be reversed, and the cause remanded to the court for a new trial.